GREELY ISAACS, *etc. v.* BOARD OF BALLOT COMMISSIONERS *et al.*

(No. 9146)

Submitted October 10, 1940. Decided December 14, 1940.

*Lee, Blessing & Steed,* for relator.
*W. F. Damron,* for respondent.

MAXWELL, JUDGE:

This is an original proceeding in mandamus by Greely Isaacs challenging the candidacy of C. J. Marcum for the office of member of the House of Delegates from Lincoln County.

By his petition, relator sought to require the Board of Ballot Commissioners of that county (1) to omit from the official election ballot (general election November 5, 1940), the name of Marcum as the Democratic nominee for House of Delegates, and (2) to place on the official ballot in lieu of Marcum's name that of relator.

This Court on September 30, 1940, issued a rule in mandamus solely as to part one aforesaid of the prayer of the petition. On this phase of the case it appears that the relator, C. J. Marcum, and two others were candidates for the Democratic nomination for member of the House of Delegates for Lincoln County at the May 1940 primary; that Marcum received a greater number of votes than were cast for any one of the other candidates, relator receiving the next highest number; that the board of canvassers certified to the Board of Ballot Commissioners the name of C. J. Marcum as the successful nominee; that on September 19, 1928, Marcum had been convicted in the District Court of the United States for the Southern District of West Virginia of the crime of larceny of an express package, in interstate delivery, of the value of $140.00 in violation of Act of Congress, February 13, 1913, 18 U. S. C. A., sec. 409; that subsequently there was imposed a sentence to federal prison for two years, and that he underwent the imprisonment; and that the ballot commissioners refused to omit Marcum's name from the official ballot.

Because of the conviction and sentence, relator urges that Marcum is disqualified for holding the office to which he aspires and therefore was not a lawful nominee; and

that the ballot commissioners were without warrant of authority to place Marcum's name on the ballot.

These contentions are grounded on the constitutional provision that "No person who has been, or hereafter shall be convicted of bribery, perjury, or other infamous crimes, shall be eligible to a seat in the Legislature." Constitution of West Virginia, Article VI, Section 14. Relator takes the position that under federal and state law the offense for which Marcum was convicted constitutes a felony (18 U. S. C. A., sec. 541, and West Virginia Code, 61-11-1); and that the crime was infamous.

By the constitutional provision quoted, inhibition from legislative service is placed against one who has been convicted of an infamous crime. An offense punishable by death or penitentiary confinement is a felony. Code, 61-11-1. And, generally, felonies are deemed infamous crimes. 14 Am. Jur., p. 755; *Crum* v. *State,* 148 Ind. 401, 47 N. E. 833.

Had Marcum been convicted in a court of this state for an offense similar to that charged in the federal indictment, punishment for conviction of grand larceny—a felony—would have been imposed. Granting that such conviction in a state court would debar him from legislative service, does it follow that such interdiction results from a federal conviction?

The right of a citizen to hold office is the general rule; ineligibility the exception. Courts are hesitant to take action resulting in deprivation of the privilege to hold office, except under clear and explicit constitutional or statutory requirement. This just and magnanimous judicial approach is exemplified in our case, *Webb* v. *County Court,* 113 W. Va. 474, 168 S. E. 760, 761. Therein we said: "It is the anxious desire of the state that those of her citizens who have transgressed her laws, suffered convictions, and paid the penalty of the law, shall profit from their unfortunate experience and thereafter make of themselves good citizens by leading lives of uprightness and usefulness."

There is a difference of opinion between courts whether a state constitutional bar, such as here under consideration, extends to convictions under the laws of other jurisdictions. The question stands *res integra* in this state.

A state constitution is formed with respect to affairs within its bounds. Such basic law is supreme within the sphere of its authority. 16 C. J. S., p. 23. But, since it does not assume to operate on matters beyond the realm, there would seem to arise the presumption that a constitutional restriction, such as here involved, is intended to apply only to those residents of the state who have offended against its laws, and not to one who at some time had committed an offense in another jurisdiction, domestic or foreign. This is consonant with the broad and fair principles above emphasized. We approve the holdings of those courts which have employed this approach. Notably, in this connection, is the case of *State ex rel. Mitchell* v. *McDonald,* 164 Miss. 405, 145 So. 508, 86 A. L. R. 290, wherein the court held: "Only conviction of crimes committed under jurisdiction of state disqualify one from holding office." In that case there were presented for consideration, (1) a constitutional interdiction which disqualified from office a person previously convicted of felony, and (2) the fact that the person whose right was challenged had suffered felony conviction in a Federal Court. Consider also the case of *Hildreth* v. *Heath,* 1 Ill. App. 82, wherein there was the holding that a Chicago charter provision making ineligible to the office of alderman any person who "shall have been convicted of malfeasance, bribery, or other corcupt practices or crimes," applied to conviction under the laws of that state, and not to conviction in a court of the United States.

A case wherein a court has taken the view that such constitutional prohibition applies as well to crimes committed beyond the jurisdiction as within, is *Irby* v. *Day,* 182 Ark. 595, 32 S. W. (2d) 157. But, for reasons which we have above emphasized, we decline to accept this latter holding, and adhere to the broader and, as we believe, the fairer and more just rule, first above stated.

The inhibition of the constitution should not be given a more far-reaching meaning and effect than its wording and spirit require.

For these reasons we entered an order October 15, 1940, refusing to award a writ of mandamus as prayed.

*Writ refused.*

Fox, Judge, concurring:

I concur in the refusal of the writ, but I would base refusal on the ground that the eligibility of the respondent to a seat in the legislature is a question which, under the constitution, is for legislative determination.

The right of the legislature to pass upon the election of its members, has not, so far as I know, been questioned. It has been exercised many times in election contests. The provision which gives to the legislature power over the election of its members also grants power with respect to their qualifications, and it logically follows that it has the same powers in relation to qualification as it does to election.

Article 6 of the Constitution provides, in a most comprehensive way, for the creation of the legislature and the regulation of its powers and duties. Section 14 of that article provides: "No person who has been, or hereafter shall be convicted of bribery, perjury, or other infamous crimes, shall be eligible to a seat in the Legislature. * * *" Section 24 of the same article provides, among other things: " * * * Each House shall determine the rules of its proceedings and be the judge of the elections, returns and qualifications of its own members. * * *." To my mind, the section from which the last quotation is made was intended to mean something. If the courts may say that one shall not be permitted to be a candidate for the legislature, then the right of the legislature to judge of "the election, returns and qualifications of its own members", is at an end. Furthermore, the question of what conduct disqualifies a given person from a seat in the legislature is a moral and political one, rather than judicial. The

paramount right of the legislature to be the judge of its membership is attested by the fact that while the majority of the Court uphold the right of the respondent to a seat in the legislature, if elected, such action will in no way bind the legislature, and if it should hereafter refuse to the respondent a seat in that body under its constitutional power, this Court would, in my opinion, be powerless to reverse the legislative decision. If this be true, why not leave the matter, in the first instance, to a body empowered by the constitution to finally determine the same?

The ground upon which the majority of the Court base their decision seems to me to be an assumption of power to control a purely legislative function. In my opinion it unduly limits the scope of an infamous crime which may justify the refusal of a seat in the legislature.