STATE *ex rel.* DAVID PAXTON

*v.*

RALPH JOHNSON, *Sheriff, Nicholas County*

(No. 13729)

Decided July 11, 1978.

*Chauncey H. Browning*, Attorney General, *William D. Highland*, Assistant Attorney General, for appellant.

*John S. Sibray* for appellee.

HARSHBARGER, JUSTICE:

David Paxton was convicted by a jury under *W.Va. Code*, 60A-4-401(a)(1)(ii) of possessing marijuana with intent to deliver it and was sentenced to one to five years in the penitentiary by the Circuit Court of Nicholas County.[1] His petition for appeal was denied here. He then petitioned for a writ of habeas corpus in the Circuit Court of Braxton County alleging that he was entrapped into committing the crime. That court granted his petition, voided his conviction, and the State appealed.

The first, third and fourth syllabus points in *State v. Knight*, ____ W. Va.____, 230 S.E.2d 732 (1976) are controlling.

The first quotes *State V. Basham*, ____ W. Va. ____, 223 S.E.2d 53 (1976), syllabus 3:

"Entrapment, as a defense to criminal prosecution, occurs where the design or inspiration for the offense originates with law enforcement officers who procure its commission by an accused who would not have otherwise perpetrated it except for the instigation or inducement by the law enforcement officers."

The third and fourth *Knight* points are:

When the defense of entrapment is asserted, the trial court is required to submit that issue to

---

[1] *W.Va. Code*, 60A-4-401(a)(l)(ii) provides:

(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.

(1) Any person who violates this subsection with respect to:

(ii) Any other controlled substance classified in Schedule I, II, or III, is guilty of a felony and upon conviction may be imprisoned in the penitentiary for not less than one year nor more than five years, or fined not more than fifteen thousand dollars, or both; . . . .

the jury if the evidence gives rise to questions regarding the readiness of the accused to commit the offense or the extent to which a government agent or informer either induced the accused to commit the crime or afforded him opportunity to commit the crime.

A trial court may find, as a matter of law, that a defendant was entrapped, if the evidence establishes, to such an extent that the minds of reasonable men could not differ, that the officer or agent conceived the plan and procured or directed its execution in such an unconscionable way that he could only be said to have created a crime for the purpose of making an arrest and obtaining a conviction.

A majority of state courts[2] and the federal courts agree with the third *Knight* rule. *See, United States v. Russell*, 411 U.S. 423 (1973); *Sherman v. United States*, 356 U.S. 369 (1958); and *Sorrells v. United States*, 287 U.S. 435 (1932).[3]

As Justice Wilson noted in *Knight*, the rule followed in a minority of the states and advocated in minority opinions in *Russell, Sherman* and *Sorrells, supra,* would not include as any facet thereof, a jury finding based on the predisposition of the defendant to commit the crime he alleges he was entrapped to commit ("the readiness of the accused to commit the offense", as stated in the *Knight* third syllabus).

Instead, it would depend upon a court deciding whether the police acted in a way that unconscionably created a crime for the purpose of making an arrest.

We found, in *Knight*, nothing mutually exclusive in the two rules:

> ... the better rule is one which approves both tests but applies them in a manner consistent

---

[2] *See,* C.J.S. Criminal Law § 45(1) (1961) and *State v. Bagemehl,* 213 Kan. 210, 515 P.2d 1104 (1973).

[3] Entrapment is recognized as a valid defense in almost all jurisdictions in the United States. 22 C.J.S. Criminal Law, § 45(1) (1961).

with the evidence. See *State v.* Mullen, 216 N.W.2d 375 (Iowa 1974). Generally the evidence will merely pose for jury determination the question of whether the design of the crime originated in the mind of the accused or in the mind of the officer or agent. *However, if the evidence establishes, to such an extent that the minds of reasonable men could not differ, that the officer or agent conceived the plan and procured or directed its execution in such an unconscionable way that he could only be said to have created a crime for the purpose of making an arrest and obtaining a conviction, then the question is one for the court to resolve without the necessity of submitting the matter to the jury.* (Emphasis ours.) 230 S.E.2d at 737.

The record here indicates that the transfer of marijuana from defendant to State Police Trooper C. W. Mitchum took place on April 13, 1973. Mitchum testified that he had gone to Nicholas County on an unrelated undercover investigation, using the name "Charles Pettry." His informer in the area was state's witness Randy Hartley.

Mitchum and the defendant first met on the day the buy took place. Mitchum and informer Hartley were sitting in a car outside a poolroom in Summersville when the defendant came by. Defendant and Hartley conversed and during their talk, defendant said he had gotten "messed up" the night before on "grass." Mitchum offered to buy marijuana from him if there was any left. The defendant said he had misplaced it the night before and that if he could find it, he would sell to Mitchum. The trooper then offered to help look for the marijuana and a meeting place was agreed upon. Hartley and Mitchum took one car; defendant and two other persons took a second car and the five met at Salmon Run near Summersville.

During the course of the search, the five got into one automobile together. Several marijuana cigarettes were passed around and all five persons either smoked or

pretended to smoke. Mitchum testified that he simulated smoking as he had been taught to do in police school but that he could not say whether his informer, Hartley, had smoked or not. Hartley testified that he had never smoked marijuana in his life, but pretended to smoke when he was around his friends, trying to obtain information for the police.

Defendant said he thought he remembered where the marijuana was hidden, so the group got out of the car to search. One of defendant's friends, Robert Fockler, found it, in eleven small plastic bags inside a green garbage bag. Defendant later sold one of the small bags to Trooper Mitchum for $20. None of the other persons witnessed the transfer. At the time the actual transfer took place, Mitchum testified that Paxton asked him if he still wanted to buy some marijuana, and the trooper indicated that he did.

Defendant Paxton testified in his own behalf that Hartley, the informer, was an acquaintance of his in April, 1973. He testified that Hartley had asked him to sell marijuana at various other times prior to the day of the transfer; and had, two weeks before, asked him specifically to sell to "Pettry." He said Hartley again approached him either the night before April 13 or early in the day of the thirteenth. Although there was confusion about how many times Hartley solicited the sale, there seems to have been at least four. In addition to the solicitations made by Hartley, Mitchum made several requests on the day the buy was made. Paxton said that the reason he finally sold the marijuana to Mitchum was that he "was just getting tired of being asked."

Informer Hartley testified that he "could have" made prior solicitations of defendant but did not admit doing so. His requests would have been made during the period from March 12, 1973, when Mitchum first entered the Nicholas County area, to April 13, when the transfer of marijuana from defendant to Mitchum took place.

The evidence of entrapment was so overwhelming as to show unconscionable government conduct both by the

informer[4] and the police undercover trooper, who together initiated the sale and participated actively in consumating it. The circuit court was correct in finding that entrapment was proved as a matter of law. Further, the government evidence of defendant's predisposition to commit the crime was insufficient to submit the issue to the trial jury.

*Affirmed.*

NEELY, JUSTICE, *dissenting:*

I dissent upon the grounds that the question of entrapment in this case was exclusively for the jury. *W.Va. Code,* 60A-4-401(a)(1)(ii) makes it a felony to possess marijuana with intent to deliver. There is no question that the defendant possessed marijuana, which he had hidden in a green garbage bag. Furthermore, the marijuana was broken down into eleven small, plastic bags for convenient sale, and the quantity possessed was sufficiently large that the quantity alone was evidence of intent to deliver. *State v. Frisby,* ____ W.Va. ____, ____ S.E.2d ____, (decided June 20, 1978) The price certainly did not reflect an accommodation sale; it was $20 which bespeaks a profit-making motive. Consequently, there was sufficient evidence for the jury to conclude that the defendant was in the drug selling business, and possessed the marijuana with intent to deliver it.

Either the possession of marijuana with intent to deliver it is illegal or such possession is not. If possesion for sale is illegal, it is not for this Court to gainsay the criminal legislation by releasing young adults, regardless of how sympathetic their cases, merely because we wish that they had not committed an illegal act. Entrapment is about law, not about persons. The facts of this case do not demonstrate entrapment as a matter of law. How else are the police to catch drug pushers? Do we

---

[4] It is well established that both paid and unpaid informers are government agents if they act on behalf of the government in inducing the commission of a crime. *See, Sherman v. U.S., supra; United States v. Waddell,* 507 F.2d 1226, 1228 (5th Cir. 1975).

really believe that pushers will turn themselves in or deliberately seek out police officers in uniform to solicit sales. Nonsense! This officer was doing his job properly; he saw a potential drug seller and presented himself as an ardent customer in order to ferret out illicit drug selling. Now *he* is the criminal because he took the State's salary and actually caught a law violator. One day maybe we will be able to put all the police in prison, instead only of putting their efforts to naught.

I am authorized to say that Chief Justice Caplan joins me in this dissent.

HARSHBARGER, *concurring:*

My Brother Neely's dissent demands answer.

His gratuitous comment that (somehow or other) our opinion made the government's agents criminals, is ridiculous. And, having arrived at that ridiculous proposition, it next pleases him to say, probably sarcastically, that we will, perhaps, someday, be able to put all police in prison.

I know of no crime the policeman and the informer are being charged with; and I also know that shrill nonjudicial mischaracterizations do not make acts of solicitation by the police, of criminal acts, not entrapment.