289 S.E.2d 714

**STATE of West Virginia**

v.

**Patty MAYNARD.**

No. 15319.

Supreme Court of Appeals of West Virginia.

March 26, 1982.

**42**

Charles T. Bailey, Logan, for appellant.

Chauncey H. Browning, Atty. Gen. and Richard E. Hardison, Deputy Atty. Gen., Charleston, for appellee.

PER CURIAM.

This is an appeal by Patty Maynard from an order of the Circuit Court of Logan County sentencing her to from one to five years in the state penitentiary and fining her $1,000.00 for delivery of phencyclidine, a controlled substance. The appellant makes multiple assignments of error which involve alleged entrapment, the prosecutor's delay in bringing the case, the chain of custody of real evidence, the instructions given to the jury, and the qualification of the jurors in the case. We find no reversible error and affirm the appellant's conviction.

The appellant was arrested as the result of an undercover drug investigation conducted in Logan County in the fall of 1980 by Trooper D. E. Difalco, a female State Police Officer, operating under an assumed name. Trooper Difalco was assisted by an informant, Susie Fortuna Jones.

According to testimony given by Trooper Difalco at trial, Susie Fortuna Jones introduced her to the appellant on October 17, 1980, at the A.B.C. Club located in Logan County. In the course of the evening Trooper Difalco asked the appellant if she had any drugs to sell. The appellant indicated that she did not. Later as the parties were leaving the A.B.C. Club, Trooper Difalco again asked the appellant if she had anything to sell. According to Trooper Difalco's testimony the appellant responded that she had some "T" [phelcyclidine] which she would give but would not sell. From the A.B.C. Club the parties went to the Trailer Club.

Trooper Difalco testified that inside the Trailer Club the appellant offered her phencyclidine, which the appellant expected her to use at that time. The Trooper indicated that she did not want to use it at that time, but she offered to buy $10.00 worth. The Trooper said that the appellant accepted the bargain and sold her the phencyclidine.

The appellant's testimony contradicted that given by Trooper Difalco. The appellant testified that behind the Trailer Club Trooper Difalco asked her to sell some "T" but she refused. The appellant said that after she refused Trooper Difalco produced a marijuana cigarette, and that the three women smoked it. The appellant then removed the "T" from her person and placed it on a piece of paper. She separated a portion of it and inhaled it through a drinking straw. The appellant testified that as she was inhaling the substance, Susie Fortuna Jones snatched the straw from her. Susie then insisted that the appellant sell the remaining "T" to Trooper Difalco. The appellant testified that she again refused, but that Susie took the paper with the remaining powder, folded it up, handed it to Trooper Difalco and accepted two $5.00 bills from the Trooper. According to the appellant Susie laid the $5.00 bills on a concrete block, and she and Trooper Difalco turned to leave. The appellant said she picked up the bills and gave them to Susie Fortuna Jones.

Susie Fortuna Jones did not testify because she had died before the commencement of the trial.

On appeal the appellant asserts that the trial court should have dismissed the indict-

ment or directed a verdict for her because it is clear that she was entrapped into the acts leading to the charges against her.

██ In syllabus point 1 of *State ex rel. Paxton v. Johnson*, 161 W.Va. 763, 245 S.E.2d 843 (1978), we said;

" 'Entrapment, as a defense to criminal prosecution, occurs where the design or inspiration for the offense originates with law enforcement officers who procure its commission by an accused who would not have otherwise perpetrated it except for the instigation or inducement by the law enforcement officers.' Syllabus No. 3, *State v. Basham*, 159 W.Va. 404, 223 S.E.2d 53 (1976). Pt. 1, Syllabus, *State v. Knight*, 159 W.Va. 924, 230 S.E.2d 732 (1976)."

In *State v. Basham, supra*, we recognized that it was proper for police officers, in an investigation, to afford opportunities for the commission of a crime. The critical test is whether the inspiration for the unlawful scheme originates with the police officers or with the accused. In *State ex rel. Paxton v. Johnson, supra*, we discussed when it was encumbent upon a trial court to hold as a matter of law that an accused was entrapped:

"A trial court may find, as a matter of law, that a defendant was entrapped, if the evidence establishes, to such an extent that the minds of reasonable men could not differ, that the officer or agent conceived the plan and procured or directed its execution in such an unconscionable way that he could only be said to have created a crime for the purpose of making an arrest and obtaining a conviction." Syllabus point 3, *State ex rel. Paxton v. Johnson, supra, citing* syllabus point 4, *State v. Knight*, 159 W.Va. 924, 230 S.E.2d 732 (1976).

██ In the case before us the evidence relating to the events preceding the transfer of the controlled substance is conflicting. According to Trooper Difalco's testimony, she did no more than ask that the appellant sell her "T". According to the appellant the Trooper and Susie Fortuna Jones, acting as her agent, did much more. In view of the conflicting testimony we believe that reasonable minds could differ

as to what actually occurred and, therefore, under the foregoing law the trial court did not error in refusing appellant's motion for a directed verdict.

The appellant committed the crime charged on October 17, 1980. She was not indicted or informed that she was charged with any criminal act until January 12, 1981. In the interval, on or about December 18, 1980, Susie Fortuna Jones died. The appellant argues that the death of Susie Fortuna Jones denied her a crucial witness and that the State, in delaying its prosecution of her, in effect, denied her access to Susie Fortuna Jones. She specifically contends that the trial court erred in refusing to dismiss the prosecution against her on the ground that the State's delay in prosecuting her was not justified.

In *State ex rel. Leonard v. Hey*, W.Va., 269 S.E.2d 394 (1980), we examined the effect of prosecutorial delay in charging a suspect after the commission of a crime. We stated that an eleven year delay was presumptively prejudicial and concluded:

"The effects of less gross delays upon a defendant's due process rights must be determined by a trial court by weighing the reasons for delay against the impact of the delay upon the defendant's ability to defend himself." Syllabus point 2 of *State ex rel. Leonard v. Hey, Id.*

Later, in *State v. Ayers*, 168 W.Va. 137, 282 S.E.2d 876 (1981), we held that a four month delay could not be considered presumptively prejudicial. That view is in line with the holding of several jurisdictions. *People v. Duran*, 188 Colo. 420, 535 P.2d 505 (1975); *State v. Roundtree*, 118 N.J. Super. 22, 285 A.2d 564 (1971); *State v. Harris III*, 37 Or.App. 431, 587 P.2d 498 (1978).

██ In the case before us we believe that there were valid reasons for not charging the appellant for three months after she committed the acts giving rise to the charge. The evidence against her was acquired in the course of an undercover operation, and the State obviously required some delay to prevent the exposure of its undercover informers and operatives. Also it was essential that the substance pur-

chased be chemically analyzed and that the evidence be legally marshalled before the State could reasonably charge the appellant. While the delay, coupled with the death of Susie Fortuna Jones, might have denied the appellant Ms. Jones' testimony, that fortuity, in view of the reasonableness of the delay, should not work against the State.

Another point which the appellant addresses involves the State's chain of custody of the phencyclidine after it was purchased from her. Specifically she notes that the evidence shows that it was in a police locker on December 14, 15 and 16, 1980, at the State Police laboratory and that several police officers had access to it. She argues that because several persons had access to it, the chain of custody was vitiated and that it should not have been admitted into evidence.

■ Our rule regarding the admissibility of physical objects into evidence is set out in syllabus point 1 of *State v. Davis*, 164 W.Va. 783, 266 S.E.2d 909 (1980):

"Before a physical object connected with a crime may properly be admitted into evidence, it must be shown that the object is in substantially the same condition as when the crime was committed. Factors to be considered in making this determination are: (1) the nature of the article, (2) the circumstances surrounding its preservation and custody, and (3) the likelihood of intermeddlers tampering with it."

In *State v. Rector*, 167 W.Va. 748, 280 S.E.2d 597 (1981), a drug case factually similar to the one now before us, we examined the chain of custody of marijuana which was taken to the State Police laboratory. We concluded that the chain of custody of the marijuana was sufficiently established by the State to justify its admission at trial. The evidence in the *Rector* case showed that from the time the marijuana was seized until it was taken to the State Police laboratory for testing it was in the sheriff's safe. While it was at the State Police laboratory it was placed in an evidence locker until it was tested. After it was tested it was returned by mail to the jail where it was found on a filing cabinet by a deputy sheriff who placed it in a safe. The controlled substance in the case before us was handled at the laboratory in the same manner as the marijuana in *Rector*, and in line with our holding in *Rector* we believe that the trial court properly admitted it into evidence.

Next the appellant argues that the trial court erred in giving State's Instruction Number 4 and in refusing to give Defendant's Instruction Numbers 5 and 6.

■ State's Instruction Number 4 informed the jurymen that they should give careful consideration to the views of their fellows, and if possible without sacrifice of their conscientious convictions, agree upon a verdict. This was a stock instruction and was counter-balanced by Defendant's Instruction Number 14, which informed the jury that if they entertained a reasonable doubt as to the appellant's guilt they should not surrender their convictions because the other jurors entertained a different opinion.

■ Defendant's Instruction Number 5 stated the fact that the appellant possessed a small quantity of a controlled substance was not evidence that she possessed the same for the commission of the crime charged in the indictment. We believe this instruction was incomplete and therefore properly refused. Syllabus point 4, *State v. Stone*, 165 W.Va. 266, 268 S.E.2d 50 (1980).

■ Defendant's Instruction Number 6 referred to the death of Susie Fortuna Jones and stated that:

"[t]he jury has the right to presume that the evidence and testimony of the said Susie Fortuna would have been unfavorable to the State in this case."

No such presumption exists, and the court properly rejected this instruction.

After the return of the jury's verdict the appellant learned that one of the jurors, Martha Cody, had been convicted of shoplifting. She argues that this was an "infamous crime" which rendered Ms. Cody disqualified to serve as a juror under the

provisions of *W.Va.Code*, 52–1–2 [1957].* In a related matter the appellant argues that the trial court erred in refusing to strike juror Bernard Codispoti since that juror was the father of Leonard Codispoti, one of the magistrates of Logan County.

■■■ As previously stated the appellant's challenge to Ms. Cody is based on the statutory provision prohibiting persons convicted of "infamous" crimes from serving on juries. At common law "infamous" crimes were treasons or felonies which were deemed to render their perpetrators infamous. 47 Am.Jur.2d *Jury* § 106 (1969); *See: People v. Harding*, 53 Mich. 48, 18 N.W. 555 (1884); *Turner v. State*, 128 Tenn. 27, 157 S.W. 67 (1913); *Bell v. Commonwealth*, 167 Va. 526, 189 S.E. 441 (1937). In *Isaacs v. Board of Ballot Commissioners*, 122 W.Va. 703, 12 S.E.2d 510 (1940), we followed this definition and concluded that "infamous" crimes were felonies or offenses punishable by death or imprisonment in the state penitentiary. Under our law shoplifting, unless it is a third or subsequent offense, is not a felony and is not punishable by death or imprisonment in the state penitentiary. *See, W.Va. Code*, 61–3A–3 [1981] and *W.Va.Code*, 61–3A–2 [1973]. We conclude that it is not an "infamous" crime. In the case before us there is no evidence that Juror Cody was convicted on other than first offense shoplifting charges. In view of the circumstances we cannot conclude that she had been convicted of an "infamous" crime or that her participation in the jury's deliberations tainted the jury's verdict.

The appellant's challenge to Juror Codispoti is grounded in the common law prohibition against persons related to either party from serving. The appellant's position is that the State is the party against her and that Juror Codispoti, who is the father of a magistrate, a State official, is, in effect, related to the State.

In *State v. West*, 157 W.Va. 209, 200 S.E.2d 859 (1973), we discussed the qualification of State employees themselves to serve as jurors. We said:

"The proliferation of responsibilities undertaken by the State and local governments and the historical tendency for the proportion of governmental employees to increase in society, cause us to doubt that all employees of State government are *prima facie* disqualified to sit as jurors in a criminal case. Each case must be evaluated on its own facts; however, we do hold it reversible error to permit a challenged juror who is an employee of the Department of Public Safety, a law enforcement arm of the State, to be a member of a panel of twenty. Obviously, by virtue of the prospective juror's association with enforcement officials he is subject to potential prejudice and peremptory challenges should not be required to disqualify him. The object of the law regarding jury selection is to secure jurors whose minds are wholly free from bias or prejudice." *State v. West, Id.*, at 219, 200 S.E.2d at 865.

Recently, we recognized that the near relatives of law enforcement officers should not serve on panels for criminal trials. *State v. Archer*, 169 W.Va. 564, 289 S.E.2d 178 (1982).

■■■ In the case before us Magistrate Codispoti did not have any connection with the preliminary phases of this case. A magistrate stands in a substantially different position from a law enforcement officer. He is charged with the disinterested resolution of disputes, and he is supposed to be a neutral and detached party. We do not believe that the likelihood of bias or prejudice which arises from relationship to a law enforcement or prosecutorial officer, parties charged with an adversarial function, automatically arises from relationship to a magistrate. In the absence of a showing of such prejudice in the case before us,

---

* *W.Va.Code*, 52–1–2 [1957], provides:

"The judge of any court may, in his discretion, exempt or excuse any person from jury service when it appears that such service would be improper or work an undue hardship. The following persons shall be disqualified from serving on juries. Idiots, lunatics, paupers, vagabonds, habitual drunkards, and persons convicted of infamous crimes."

**46**

we cannot conclude that the trial court erred in allowing Juror Codispoti to serve.

Lastly the appellant contends that the trial court erred in refusing to allow her counsel to cross-examine Trooper Difalco, in the presence of the jury, about a certain drug transaction with one Rick Lowe. The appellant asserts that such cross-examination would have shown that Trooper Difalco had obtained the substance by means of entrapment and that the Lowe transaction would have shown that Trooper Difalco was involved in a common scheme to entrap persons into selling controlled substances to her. In syllabus point 1 of *State v. Charlot*, 157 W.Va. 994, 206 S.E.2d 908 (1974), we stated our general rule on cross-examination:

"The extent of the cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in case of manifest abuse or injustice."

In the case before us we believe that testimony regarding Trooper Difalco's other investigation in Logan County with a Rick Lowe was not relevant to her investigation resulting in the appellant's arrest. There may be occasions where cross-examination in this area is warranted if there are several prior occurrences of a similar nature, but we do not believe that one isolated incident is sufficient. Cf., *State v. Stewart*, 161 W.Va. 127, 239 S.E.2d 777, 785 (1977). We therefore conclude that the trial judge did not abuse his discretion in disallowing the cross-examination of Trooper Difalco regarding her transactions with Rick Lowe.

Inasmuch as we have failed to find reversible error, the judgment of the Circuit Court of Logan County is affirmed.

Affirmed.