**David BERGER, Petitioner/Movant**

v.

**UNITED STATES of America, Respondent.**

Cr. A. No. 2:93–00102.
Civ. A. No. 2:93–1192.

United States District Court,
S.D. West Virginia,
at Charleston.

Nov. 9, 1994.

---

David Berger, pro se petitioner.

United States Atty., Charleston, WV, for respondent.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

By motion brought pursuant to Title 28, United States Code, section 2255, movant David Berger seeks to vacate, set aside or correct the sentence imposed on September 15, 1993, following his plea of guilty to a charge of conspiracy to distribute heroin. Berger challenges the calculation of his criminal history points under the sentencing guidelines. He alleges that it was inappropriate to charge him with two points for a 1988 conviction under Title 18, United States Code, section 922(g)(1), as being a "felon in possession of a firearm." It is his contention that his civil rights had been restored following the felony conviction underlying the firearm charge, rendering the firearm conviction invalid. He thus maintains that the two points assessed for the firearm violation should be subtracted from his criminal history and that his sentence should be reduced to reflect that adjustment. The result of such an adjustment is that the movant would fall in criminal history category I rather than II, so that his guideline sentencing range for the heroin conspiracy conviction would be six to twelve months instead of eight to fourteen months. The movant was sentenced to one year and one day.

### I. Background

By memorandum order entered on May 31, 1994, the court concluded on the reasoning of United States v. Maybeck, 23 F.3d 888 (4th Cir.1994), that Berger could attack his sentence in this section 2255 action under the "actual innocence" exception to the "cause and prejudice" requirement ordinarily imposed when a defendant, following a guilty plea, seeks review in a collateral proceeding of an error in sentencing to which no contemporaneous objection was made and from which no direct appeal was taken.[1] The court further held that Berger would be entitled to a modification of his sentence if he could demonstrate that he was "actually in-

nocent" of the 1988 firearm conviction because his civil rights had been restored by the State of West Virginia prior to the time of the firearm violation. Mem.Order of May 31, 1994, at 5–6. Thereafter, a hearing was conducted for the purpose of determining that issue.

The felony conviction underlying Berger's 1988 section 922(g)(1) conviction as a felon in possession of a firearm was a 1982 State of West Virginia conviction for unlawful wounding. On that charge, Berger was placed on probation for a period of three years. His probation sentence expired on November 15, 1985. At the hearing held in this action, Berger conceded that the only writing he received from the state following the completion of his sentence on the unlawful wounding conviction was a letter advising that his probationary period had expired as of November 15, 1985. The government contended that Berger could not demonstrate that his civil rights had been restored in the absence of a writing to that effect. Berger maintained to the contrary that, notwithstanding the lack of a writing stating his civil rights were restored, those rights were automatically restored by operation of state law on completion of his sentence and there were no restrictions on his right to possess a firearm.

### II. Discussion

■ The firearm offense which resulted in Berger being assessed with a two-point criminal history at the 1993 sentencing under challenge in this action was based on Title 18, United States Code, section 922(g)(1), which makes it a federal crime for any person convicted of a felony to possess a firearm. 18 U.S.C. § 922(g). The section 922(g)(1) violation cannot, however, be predicated on a previous felony conviction for which a person's civil rights have been restored, unless the restoration "expressly provides that the person may not ship, transport, possess or receive firearms."[2] § 921(a)(20); United

---

1. In Maybeck, the Fourth Circuit Court of Appeals held that notwithstanding the failure to show cause for procedural default and resulting prejudice, section 2255 permitted a collateral attack on a sentence based on classification as a career offender if defendant was "actually innocent" of one of the predicate convictions on

which that classification was based. Maybeck, 23 F.3d 888.

2. Section 921(a)(20) states in pertinent part:
   Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not

*States v. Metzger,* 3 F.3d 756, 758 (4th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994). In other words, section 921(a)(20) excludes from consideration under section 922(g)(1) those felony convictions for which a defendant has had his civil rights restored, if, in addition, his firearm privileges are not restricted.[3] *United States v. Hassan El,* 5 F.3d 726, 733 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994); *United States v. Clark,* 993 F.2d 402, 405 (4th Cir. 1993).

▆▆▆ The term "civil rights" denotes those rights accorded an individual by virtue of his citizenship in a particular state and is generally deemed to include "the right to vote, the right to hold public office, and the right to serve on a jury." *Hassan El,* 5 F.3d at 734 (citing *United States v. Cassidy,* 899 F.2d 543, 549 (6th Cir.1990)); *see also Metzger,* 3 F.3d at 758 (quoting *Cassidy,* 899 F.2d at 549). To render a prior conviction unavailable for consideration in accordance with the civil rights restoration provision of section 921(a)(20), the restoration of rights need not be complete, "but it must be substantial." *Metzger,* 3 F.3d at 758 (citing *Cassidy,* 899 F.2d at 549; *Clark,* 993 F.2d at 405); *see Hassan El,* 5 F.3d at 734 (discussing § 921(a)(20) in the context of the armed career criminal enhancement provisions of 18 U.S.C. § 924(e)).

▆▆▆ In determining whether a person's civil rights have been restored, courts must look to the whole law of the state. *Metzger,* 3 F.3d at 758 (citing *United States v. McLean,* 904 F.2d 216, 218 (4th Cir.), *cert. denied,* 498 U.S. 875, 111 S.Ct. 203, 112

L.Ed.2d 164 (1990)). Consequently, for states having no general restoration of rights statutes for criminal offenders and no procedure for the affirmative act of issuing certificates of discharge restoring rights on completion of the sentence imposed, the determination is to be based on other state laws addressing specific civil rights. *Hassan El,* 5 F.3d at 734 (looking to Maryland statutes governing the right to vote and the right to sit on a jury after a criminal conviction); *Metzger,* 3 F.3d at 758–59 & n. 3 (looking to Michigan statutes governing the rights to vote, hold public office and serve on a jury, and, in addition, Michigan Court Rules applicable to for-cause challenges to a prospective juror).

▆▆▆ A determination that state law prohibits or creates a significant barrier to a defendant's performance of jury service precludes a finding that there has been a substantial restoration of his civil rights such that the restoration provisions of section 921(a)(20) are satisfied. *Hassan El,* 5 F.3d at 734; *Metzger,* 3 F.3d at 758–59; *accord United States v. Essig,* 10 F.3d 968, 976 (3d Cir.1993). Accordingly, a section 922(g) firearm conviction may not be avoided where the right to perform jury service has not been restored. *Metzger,* 3 F.3d at 759. As will be seen, under West Virginia law, Berger's right to serve on a jury has not been restored and he is precluded from taking advantage of the restoration provisions of section 921(a)(20).

### A. Requirement of an Affirmative Act

West Virginia, like Maryland and Michigan, the states whose laws were subject to

---

be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

3. The court observes that in 1988, it was unlawful for any person in the state to carry a dangerous or deadly weapon on his person without having a license to do so. W.Va.Code § 61–7–1 (1984 Repl.Vol. & 1988 Cum.Supp.) (amended in 1989 at § 61–7–3 to prohibit the carrying of a concealed deadly weapon without a license). There was no prohibition against a convicted felon having a firearm in his possession until July 7, 1989, when section 61–7–7, prohibiting a felon

from possessing a firearm, took effect. The 1989 amendment followed a 1986 amendment to the Constitution of West Virginia, which guarantees a person "the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use." W.Va. Const. art. III, § 22. Berger's 1988 conviction was simply for possession of a firearm, which, as distinguished from the unlicensed carrying of a dangerous or deadly weapon on his person, was not unlawful at the time. Thus, it cannot be said that there was a state-imposed restriction on Berger's privilege of possessing a firearm at the time he was convicted of the federal crime of being a felon in possession of a firearm.

review in *Hassan El* and *Metzger*, has no statutory provision for the restoration of civil rights for criminal offenders. Nor does West Virginia furnish certificates of discharge referencing the restoration of civil rights to criminal offenders who have completed service of probationary sentences under judicial supervision, although it routinely provides certificates of that nature to persons who are incarcerated in a state penal institution as a part of their sentence even though there appears to be no statutory basis for doing so.[4]

All but one of the circuit courts of appeals considering the question have concluded that section 921(a)(20) does not require an affirmative act to restore civil rights before the conviction is excluded from the section 922(g) offense.[5] *United States v. Hall*, 20 F.3d 1066, 1068–69 (10th Cir.1994) (no affirmative act required if state law restores civil rights automatically); *United States v. Glaser*, 14 F.3d 1213, 1218 (7th Cir.1994) (where no formal notice of civil rights restoration given, question is determined by reference to state statutes); *United States v. Thomas*, 991 F.2d 206, 213 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 607, 126 L.Ed.2d 572 (1993) (rights "reinstated automatically by operation of law . . . are no less 'restored' than are such rights that have been resurrected by an 'affirmative act of the state' "); *United States v. Dahms*, 938 F.2d 131 (9th Cir.1991) (restoration need not be by an affirmative act or a general restoration statute, but can be auto-

matic by operation of the statutes dealing with the specific civil rights revoked upon conviction).

In seeming agreement, the Fourth Circuit Court of Appeals makes no reference to an affirmative restoration requirement in either *Hassan El* or *Metzger*. Instead, finding no affirmative act, the court in both cases simply proceeds to analyze the whole law of the state. Had the court found an affirmative act necessary, the cases could have been decided on that basis alone, but they were not. Indeed, the Fourth Circuit Court of Appeals has stated that even when there is a certificate restoring civil rights, the court must nonetheless "look 'to the whole of state law' and not just simply to the face of a certificate restoring to a defendant his civil rights."[6] *Clark*, 993 F.2d at 403 (citing *United States v. McLean*, 904 F.2d 216, 218 (4th Cir.), *cert. denied*, 498 U.S. 875, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990)).

■ The court accordingly concludes that Berger's lack of a writing stating that his civil rights have been restored without restriction of his firearms privilege is not determinative of the issue. The court instead looks to the whole of West Virginia law to determine whether the civil rights identified by the Court of Appeals for the Fourth Circuit in *Metzger* and *Hassan El* were automatically restored to Berger on completion of his sentence in 1985. As an initial step, it is helpful to review two opinions of the West

---

**4.** West Virginia does not statutorily provide for the automatic restoration of civil rights on discharge from confinement and the basis for the issuance of certificates of discharge containing a statement that all civil rights are thereby restored is unclear. Perhaps the practice emanates from a 1972 opinion of the West Virginia Attorney General addressed to the Director, Public Institutions Commission, Division of Corrections, which, it will be seen, mistakenly concludes that a convicted felon's rights of citizenship are immediately restored once he is no longer in legal custody.

**5.** To the contrary is the First Circuit Court of Appeals, which has held that the restoration of civil rights, like a pardon or expungement, requires an affirmative act. *United States v. Ramos*, 961 F.2d 1003, 1008–10 (1st Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992).

**6.** In an earlier case, *United States v. Haynes*, 961 F.2d 50 (4th Cir.1992), the Fourth Circuit Court of Appeals looked only to the certificate of discharge in stating that the defendant's civil rights were restored by the State of West Virginia when he was discharged from parole. *Id.* at 51. It must be noted, however, that the issue before the court in *Haynes* was not whether the defendant's civil rights had been restored, but whether his firearms privilege was restricted by reason of West Virginia's subsequently enacted statute making it a misdemeanor for a convicted felon to possess a firearm. *Id.* at 52. Consequently, the court's failure to look beyond the certificate of discharge in *Haynes* is not at odds with the above-quoted statement in *Clark*. Indeed, the court recognized in *Haynes* that by examining West Virginia's firearms statute, it was looking beyond the certificate of discharge to the whole of the state's laws. *Id.* at 53.

Virginia Attorney General which are relied on by Berger for the proposition that all of his civil rights were automatically restored by operation of state law on completion of his state court sentence.

Berger relies primarily on a July 11, 1972, opinion in which the attorney general was asked to determine whether a convict, once discharged from parole, "can automatically and instantaneously be restored his rights as a citizen." 55 Op.Att'y Gen. 3 (1972). The opinion examines § 3–1–3 of the West Virginia Code, which provides that no person "who is under conviction of ... felony ... shall be permitted to vote ... while such disability continues," together with the West Virginia Supreme Court of Appeals' interpretation of that provision in *Osborne v. County Court,* 68 W.Va. 189, 69 S.E. 470 (1910). On the reasoning of *Osborne,* the opinion concludes that when a parolee is discharged, he is "no longer 'under conviction' ... [h]is disability has been removed, and therefore, he should be considered to be one who has full rights of citizenship, including, for example, the right to vote." 55 Op.Att'y Gen. at 4–5. The opinion does not discuss either the right to hold public office or the right to serve on a jury. Consequently, it does not provide support for a finding that any civil right other than the right to vote is automatically restored on discharge from parole.

Berger also cites a 1965 opinion of the attorney general, 51 Op.Att'y Gen. 182 (1965), addressing a convicted felon's right to serve on a jury. The opinion, issued on February 1, 1965, concludes in pertinent part that "[a]s soon as the convicted person has served his full term of imprisonment, ... he ... may serve as a juror." *Id.* at 186. The apparent basis for the statement is the decision of the West Virginia Supreme Court of Appeals in *Webb v. County Court,* 113 W.Va. 474, 168 S.E. 760 (1933), which is quoted by the attorney general. 51 Op.Att'y Gen. at 184. It is stated in *Webb* that a felon who has served his sentence "is not disqualified from jury service." *Webb,* 168 S.E. at 761. West Virginia Code 1931, § 52–1–1, is cited as authority for that statement.

A review of West Virginia statutes governing jury service demonstrates that for the period of time commencing at least in 1923 and continuing to 1945, "persons convicted of infamous crimes" were merely exempt from serving on juries. *See e.g.,* West Virginia Code of 1932, § 52–1–2. "Exemption" was not deemed to be "disqualification" from service nor ground for challenge. *State v. Beale,* 104 W.Va. 617, 141 S.E. 7, 11 (1927). In 1945, the statute was amended. The amendment exempted certain persons, as had the earlier version of the statute, and added a provision that certain persons "shall be disqualified from serving on juries." Among those disqualified were "persons convicted of infamous crimes." W.Va.Code § 52–1–2 (1945 Supp. to W.Va.Code of 1943). The disqualification of "persons convicted of infamous crimes" remained in 1957 amendments to § 52–1–2. *See* W.Va.Code § 52–1–2 (1960 Cum.Supp. to W.Va.Code of 1955). It was also retained in 1988, W.Va.Code § 52–1–8, when comprehensive amendments to Chapter 52 were enacted. The disqualification continues to be a part of § 52–1–8 in its current form.

From the above review, it is seen that when *Webb* was decided in 1933, a convicted felon was not disqualified from service after completion of his sentence. However, by the time the attorney general issued his opinion in 1965, the statute governing jury service had been amended and "persons convicted of infamous crimes" were "disqualified," not merely "exempted" from service. The opinion of the attorney general, which did not take the statutory amendment into account, is accordingly discredited.

Having concluded that Berger's reliance on the referenced opinions of the attorney general is misplaced, the court proceeds to examine the balance of West Virginia law to determine whether his civil rights were restored by operation of law.

### B. *Right to Vote*

The Constitution of West Virginia and a corresponding statute provide that "no person ... who is under conviction of ... felony ... shall be permitted to vote while such disability continues." W.Va. Const. art. IV, § 1; W.Va.Code § 3–1–3. Based on the words "under conviction" and "while such

disability continues," the West Virginia Supreme Court of Appeals has held that disfranchisement does not continue after the punishment has been served. *Osborne v. Kanawha County Court,* 68 W.Va. 189, 69 S.E. 470 (W.Va.1910); *see also* 55 Op.W.Va. Att'y Gen. 3 (1972); 51 Op.Att'y Gen. 182 (1965). On the basis of *Osborne,* it is apparent that Berger's right to vote was restored when his probationary sentence expired in 1985, approximately three years before he was charged under section 922(g)(1) as being a felon in possession of a firearm.

## C. *Right to Hold Public Office*

Turning to the right of its citizens to hold public office, it is seen that the Constitution of West Virginia prohibits any person "who has been ... convicted of bribery, perjury or other infamous crime" from serving in the West Virginia legislature, W.Va. Const. art. VI, § 14, if the conviction for the identified crime is under the laws of West Virginia, as distinguished from the laws of other jurisdictions, *Isaacs v. Board of Ballot Comm'rs,* 122 W.Va. 703, 12 S.E.2d 510 (1940). A felony is an infamous offense. *State v. Maynard,* 170 W.Va. 40, 289 S.E.2d 714, 718 (1982). The West Virginia Supreme Court of Appeals has stated in dicta that "ex-convicts" are thus precluded from serving in the state legislature. *Webb v. County Court of Raleigh County,* 113 W.Va. 474, 168 S.E. 760, 761 (1933); *see also* 51 Op.Att'y Gen. 182 (1965).

A person convicted of bribery or attempted bribery of a State of West Virginia executive, judicial officer or member of the legislature "in order to influence him, in the performance of any of his official or public duties" and any officer or legislator who demands or receives anything of value "for the performance of his official or public duties, or for refusing or failing to perform the same, or for any vote or influence" is constitutionally and statutorily permanently disqualified from holding any office in West Virginia. W.Va. Const. art. VI, § 45; W.Va.Code § 61–5A–9.

In addition, no person convicted of a felony by any court in or out of the State of West Virginia may, "while such conviction remains unreversed, be elected or appointed to any office under the laws" of West Virginia.

W.Va.Code § 6–5–5. The statutory phrase "remains unreversed" is construed to disqualify a person from holding public office only until he has paid the full penalty of the law. *Webb,* 168 S.E. at 760; *see also Nibert v. Carroll Trucking Co.,* 139 W.Va. 583, 82 S.E.2d 445, 452 (1954), (Lovins, J., concurring) (citing *Webb,* 168 S.E. 760).

Inasmuch as Berger's 1985 conviction was not for bribery or attempted bribery of a public official, it did not permanently disqualify him from holding any public office in the state. Nor, having completed his sentence, is he barred from holding public office under the provisions of West Virginia Code § 6–5–5. Having been convicted of a felony under the laws of West Virginia, he is, however, constitutionally prohibited from serving in the legislature of this state.

## D. *Right to Serve on a Jury*

By statute, a person who "has been convicted of perjury, false swearing or other infamous offense," is disqualified from jury service in the courts of West Virginia. W.Va.Code § 52–1–8. A felony is an infamous offense. *Maynard,* 289 S.E.2d at 718. The disqualification contains no limitation similar to that used in the constitutional and statutory provisions governing the right to vote and the right to hold public office. That is, it is not limited to the period of time that the person is "under conviction," or that his "conviction remains unreversed," or that the "disability continues." Nor has the disqualification ever been interpreted by the West Virginia Supreme Court of Appeals as ceasing to exist after the convicted person has served his sentence. Consequently, the court finds that Berger's right to serve on a jury in the State of West Virginia was permanently lost as a result of his unlawful wounding conviction in 1982.

## III. *Conclusion*

As earlier stated, the Fourth Circuit Court of Appeals held in *Hassan El* that the loss of the right to sit on a jury, standing alone, "precludes a finding of a substantial restoration of civil rights necessary to satisfy § 921(a)(20)." *Hassan El,* 5 F.3d at 734. Here, Berger's state felony conviction in 1982

not only permanently disqualified him from serving on a jury but also forever barred him from holding the public office of state legislator. The loss of those rights compels the court to conclude under the reasoning of *Hassan El* and *Metzger* that Berger's civil rights were not substantially restored by automatic operation of the laws of West Virginia when his probationary sentence expired on November 15, 1985.

Berger thus cannot be found "actually innocent" of that offense. The two-point criminal history assessment based on the 1988 section 922(g)(1) firearm conviction was properly included in the sentencing guidelines calculation used in sentencing Berger in 1993 on the offense of conspiracy to distribute heroin. This action to vacate, set aside or correct that sentence is properly denied.

It is accordingly **ORDERED** that movant's motion, brought pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct the sentence imposed by this court on September 15, 1993, be, and the same hereby is, denied.