UNITED STATES of America

v.

**Gerald R. CARON.**

**Criminal No. 94–10040–WGY.**

United States District Court,
D. Massachusetts.

Sept. 12, 1996.

---

Owen S. Walker, Federal Defender Office, Boston, MA, for defendant.

Brian T. Kelly, United States Attorney's Office, Strike Force Division, Criminal, Boston, MA, for U.S.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

### I. PROCEDURAL BACKGROUND

On February 10, 1994, Gerald R. Caron ("Caron") was indicted in this Court for various violations of 18 U.S.C. § 922(g)(1), all stemming from his status as a federally-defined "felon" in possession of firearms. At his trial[1] the jury found Caron guilty of four counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[2] After conviction, this Court sentenced Caron to 262 months in a federal penitentiary pursuant to the Firearms Owners' Protection Act, Pub.L. No. 99–308, § 104(a)(4), 100 stat. 449, 456 (1986) (codified as amended at 18 U.S.C. § 924[e]), one of the myriad variations of the popular "three strikes and you're

out" policy.[3] In *United States v. Caron,* 64 F.3d 713, 715 (1st Cir.1995) *(Caron I)*, the United States Court of Appeals for the First Circuit affirmed this conviction, but granted a limited rehearing *en banc, Caron I,* 64 F.3d at 719, to consider whether certain of Caron's prior felony convictions properly could be counted as predicate crimes for the purpose of sentencing him as an Armed Career Criminal in view of the third sentence of 18 U.S.C. § 921(a)(20)[4] which provides specifically that:

> [a]ny conviction which has been expunged, or set aside or for which a person has been pardoned *or has had civil rights restored* shall not be considered a conviction ... unless such pardon, expungement, or restoration of civil rights *expressly provides* that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (emphasis added).

In *United States v. Caron,* 77 F.3d 1 (1st Cir.) *(Caron II ) cert. denied,* —— U.S. ——, 116 S.Ct. 2569, 135 L.Ed.2d 1085 (1996), the First Circuit sitting *en banc* reversed its earlier decision in *United States v. Ramos,* 961 F.2d 1003 (1st Cir.1992), and held that civil rights may be restored within the meaning of section 921(a)(20) by laws of general or

---

1. The facts as revealed in trial are that on July 14, 1993, Caron was apprehended by the police. He was intoxicated and holding a rifle with his finger on the trigger while talking with a woman. At that time, police seized a .22 caliber rifle and 185 rounds of ammunition. On December 1, 1993, police and agents from the department of Alcohol, Tobacco, and Firearms raided Caron's house and seized six rifles and shotguns and 6,823 rounds of ammunition.

2. Title 18 U.S.C. § 922(g)(1) states that it is unlawful for any person:

   who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition ... which had been shipped or transported in interstate or foreign commerce.

   18 U.S.C. § 922(g)(1).

3. Section 924(e) states, in relevant part:

   In the case of a person who violates section 922(g) ... and has three previous convictions ... for a violent felony or serious drug offense, or both, committed on occasions different from one another, such person shall be fined not

more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1). Sentencing enhancements under this provision are commonly referred to as being the sentencing of an armed career criminal.

As a younger man, Caron had offended against the laws of four separate sovereigns: a New Hampshire misdemeanor conviction for possessing burglarious instruments, three Massachusetts felonies involving breaking and entering, a California conviction of attempted murder, and three federal firearms convictions within this District arising out of the same incident. Pre–Sentence Report ¶¶ 57–89 (Aug. 31, 1994). His last conviction prior to the present case took place in 1979. *United States v. Caron,* 615 F.2d 920 (1st Cir.1980) (affirming earlier conviction and holding defendant's appeal frivolous).

4. Section 921(a)(20) was enacted in the Firearm Owners' Protection Act, Pub.L. No. 99–308, § 101(5), 100 Stat. 449, 449–50 (1985).

automatic application rather than by· "focused, individualized, affirmative action." *Caron II*, 77 F.3d at 2 (citing *Ramos*, 961 F.2d at 1009).[5] The First Circuit also held that "the fact that one civil right was never lost did not prevent an individual from 'having had civil rights restored'" within the meaning of section 921(a)(20), *id.*, and remanded the case to this Court for resentencing in accordance with its opinion.

■ *Caron II* does not purport to answer all the questions that necessarily arise upon the resentencing. Specifically, the First Circuit instructed this Court to determine (1) whether Caron's right to sit on a Massachusetts jury had not been sufficiently restored, or (2) whether Massachusetts law contains an express provision against ex-felons possessing firearms, *id.* at 6,[6] such that Caron ought still be sentenced as an armed career criminal, i.e. pursuant to 18 U.S.C. § 924(e)(1). The parties have briefed these issues and the Court has heard argument thereon. The government continues staunchly to maintain that Massachusetts statutes do not completely restore a felon's civil right to serve on a jury and, in any event, expressly restrict their right to possess firearms.[7] Government's Resentencing Memorandum at 2.

## II. ANALYSIS OF MASSACHUSETTS LAW

### A. Restoration of Caron's Right to Sit on a Jury in Massachusetts

■ Although the First Circuit's holding in *Caron II* is dispositive of the general·issue of how state and federal law may affect the restoration of Caron's civil rights with respect to his Massachusetts convictions, the specific issue of whether his right to serve on a jury has been fully restored is one of Massachusetts law, as section 921(a)(20) expressly provides, "[w]hat constitutes a conviction ... shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." *Beecham v. United States*, 511 U.S. 368, ——, 114 S.Ct. 1669, 1670, 128 L.Ed.2d 383 (1994) (referring to this clause as "the choice-of-law clause"); *see Caron II*, 77 F.3d at 6; *United States v. Cassidy*, 899 F.2d 543, 545–46 (6th Cir.1990) (construing 18 U.S.C. § 921[a][20] and holding that Congress clearly "intended that courts refer to state law to determine whether an individual should be subject to federal firearms disabilities by virtue of a criminal conviction"). As noted by the First Circuit in *Caron II*, civil rights, as referred to within the meaning of section 921(a)(20), comprise the right to vote, the right to seek and hold public office, and the right to serve on a jury. *See Caron II*, 77 F.3d at 2 (citing *Cassidy*, 899 F.2d at 549).

In the Commonwealth, a convicted felon's right to vote is guaranteed by law and can never be taken away. *See* Mass.Gen.Laws Ann. ch. 54, §§ 86, 103B (West 1991); *see also Cepulonis v. Secretary of the Commonwealth*, 389 Mass. 930, 937–38, 452 N.E.2d 1137 (1983). Convicted felons do, however, lose their right to hold public office, but only during the period of their incarceration. *See* Mass.Gen.Laws Ann. ch. 279, § 30 (West 1981). Neither of these first two civil rights

---

5. This holding brought the law of this circuit into sync with that of seven other circuits, *see Caron II*, 77 F.3d at 2 & n. 1 and cases cited therein.

6. The First Circuit's focus on Massachusetts law makes sense, even though Caron has been convicted of felonies in the courts of California and the United States as well. This is so because the California felony convictions resulted from one incident and the United States convictions from another. That's two. Section 924(e)(1) requires convictions stemming from violent felonies on **three** separate occasions. Should the Massachusetts' convictions not count, therefore, resentencing at a lower range is mandatory. As will be seen, however, analysis of Massachusetts law

alone is insufficient to establish the framework for resentencing.

7. This Court notes at the outset that there is no individual right to possess firearms, nor is possession of a firearm a civil right. *See United States v. Warin*, 530 F.2d 103, 106–07 (6th Cir.), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976); *Thomas v. The Members of the City Council of Portland*, 730 F.2d 41, 42 (1st Cir.1984) (holding that established case law clearly grants no federal constitutional right to carry a concealed weapon); *United States v. Kozerski*, 518 F.Supp. 1082, 1090 (D.N.H.1981) (holding that the right guaranteed by the Second Amendment is a collective right to bear arms rather than an individual right).

is at issue, since they do not apply to Caron: he never lost his right to vote, and he regained his right to seek and hold public office following his release from prison.[8]

■ The status of the third right, the right to serve on a jury, is less clear. In Massachusetts, a felon is disqualified from service as a juror until seven years have passed since the conviction. Mass.Gen.Laws Ann. ch. 234A § 4(7) (West 1986) (grounds for disqualification from juror service). On its face, chapter 234A appears to be a "law of general or automatic application" as referred to by the First Circuit in *Caron II*, 77 F.3d at 2, since it allows for the passive restoration of the right to serve on a jury after the seven year time period has elapsed. Thus, this civil right is restored without any "affirmative, individualized" state action. *Caron II*, of course, reversed *Ramos*, 961 F.2d at 1009 (holding that "individualized official judgment" is necessary as evidence of the state's "renewed trust" in the individual in order to restore a felon's civil rights under 18 U.S.C. § 921[a][20] ).

■ The Court takes judicial notice of the judicial procedures of the Commonwealth to implement Mass.Gen.L. ch. 234A, § 4(7). Fed.R.Evid. 201. The juror questionnaire propounded by the Commonwealth's Jury Commissioner asks whether one has been convicted of a felony.[9] Where there is an affirmative response, the Office of the Jury Commissioner checks the date of conviction and, for seven years thereafter, deletes the individual from the roster of individuals summoned for service to the various courthouses of the Commonwealth. Thereafter, however, the individual's response to the questionnaire is forwarded for service along with those of all other eligible jurors.

Under Mass.Gen.L. ch. 234, § 8, however, a justice may relieve a person who has been convicted of any felony from a jury panel solely on the basis of the prior felony conviction.

> If a person whose name has been so placed in the jury box has been convicted on any felony, ... or is found by the justice holding court to be unqualified or unfit to serve as a juror, he *may* be relieved by said justice from sitting in any case, or his name ordered by the justice to be stricken from the jury list.

Mass.Gen.Laws Ann. ch. 234, § 8 (West 1986) (emphasis added). Under Massachusetts law, therefore, justices of the Commonwealth may, but are not required to, exclude individuals with criminal records from the venire based on their criminal records. *See, e.g., Commonwealth v. Amazeen*, 375 Mass. 73, 82–83, 375 N.E.2d 693 (1978) (holding that the trial court did not err in excusing a juror previously sentenced to six months in jail); *Commonwealth v. Martin*, 357 Mass. 190, 191, 257 N.E.2d 444 (1970) (holding that trial justice's dismissal of six veniremen without examination on the basis of their prior criminal records did not deprive defendant of a fair jury); *but see Commonwealth v. Wong Chung*, 186 Mass. 231, 234, 71 N.E. 292 (1904) (holding that a record of conviction of a crime does not necessarily disqualify one from serving as a juror and noting "it is not the law that persons convicted of a crime shall be permanently deprived of their civil rights").

The convergence of these two statutes establishes the following peculiar situation: a convicted felon as to whom the requisite amount of time since conviction has passed and who is otherwise qualified to serve as a juror may nonetheless be stripped of his civil

---

8. To be sure, there are other restrictions placed on convicted felons in Massachusetts. For example, a felon cannot be a police officer, Mass.Gen. Laws Ann. ch. 41, § 96A (West 1994); be appointed as an inspector of public safety, Mass. Gen.Laws Ann. ch. 22, § 6A (West 1994); or become a corrections officer or be involved with any position involving the regulation of a correctional facility, Mass.Gen.Laws Ann. ch. 125, § 9 (West 1991). Massachusetts also bars convicted felons from applying for a liquor license, Mass. Gen.Laws Ann. ch. 138 § 15 (West 1991); selling

ammunition, Mass.Gen.L. ch. 140, § 122B (West 1991); and operating a driving school, Mass. Gen.Laws Ann. ch. 90, § 32G (West 1989). These restrictions, although onerous, do not amount to a loss of civil rights as defined by *Caron II*, and so are not considered here.

9. *See* question 3, reason code 07 to Massachusetts' Confidential Juror Questionnaire, *reprinted in full in* 1 William G. Young, Juries, Judges and Judging 123–24 (MCLE 1996).

right to sit on a jury—a right which had been restored to him automatically by act of law—by the justice holding court, acting pursuant to powers granted by statute. Because of the power granted to trial justices pursuant to section 8 of chapter 234, what exists in this Commonwealth is not the full restoration of a felon's civil right to sit on a jury but—to borrow a term from the law of real property—merely a civil right to sit on a jury subject to defeasance.

Addressing Caron's impaired right to serve on a jury, the government—predictably—contends that since felons like Caron can never fully regain their right to sit on a jury in Massachusetts, they can not have complete restoration of their civil rights within the meaning of 18 U.S.C. § 921(a)(20).[10] The government asserts that "an impaired right to serve on a jury indicates that a felon's rights have *not* been restored." Government's Resentencing Memorandum at 9. As support for this latter assertion, the government relies upon "numerous" decisions throughout the country. *See United States v. Essig,* 10 F.3d 968, 975–76 (3rd Cir.1993), *reh'g denied,* January 5, 1994; *United States v. Metzger,* 3 F.3d 756, 759 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994); *United States v. Driscoll,* 970 F.2d 1472, 1478–79 (6th Cir. 1992), *cert. denied,* 506 U.S. 1083, 113 S.Ct. 1056, 122 L.Ed.2d 362 (1993); *Presley v. United States,* 851 F.2d 1052, 1053 (8th Cir. 1988); *Berger v. United States,* 867 F.Supp. 424, 427 (S.D.W.Va.1994).

The government's reliance is misplaced. In *Essig,* the Third Circuit held that restoration of a felon's civil rights was not complete where Pennsylvania law disqualified a citizen from serving on a jury if he "has been convicted of a crime punishable by imprisonment for more than one year and has not been granted a pardon or amnesty therefor." *Essig,* 10 F.3d at 975 (quoting 42 Pa.Cons.St. Ann. § 4502[3] [1981] ). Although the felon

in *Essig* never lost the right to vote and retained the right to hold public office, the Third Circuit held that the retention of two of the three core civil rights did not amount to full restoration of civil rights within the meaning of section 921(a)(20). Unlike Mass. Gen.L. ch. 234A § 4(7), however, the Pennsylvania juror-disqualification statute provided no vehicle short of a full pardon or amnesty through which a convicted felon could regain the right to serve on a jury. Massachusetts provides such a vehicle after seven years have passed, regardless of whether or not a pardon has issued. *See* Mass.Gen. Laws Ann. ch. 234A, § 4(7) (West 1986).

Similar to the Third Circuit's holding in *Essig, supra,* the courts in *Presley,* 851 F.2d at 1053 and *Berger,* 867 F.Supp. at 430, concluded that a felon's civil rights were not substantially restored because state law permanently disqualified ex-felons from service as a juror. Missouri's juror-disqualification law, at issue in *Presley,* stated that "a person who is convicted ... of any felony shall be *forever* disqualified from serving as a juror." Mo.Rev.Stat. § 561.026(3) (emphasis added), *cited in Presley,* 851 F.2d at 1053. The *Presley* court held that this law, coupled with other limitations on holding public office and on obtaining public employment, precluded substantial restoration of a felon's civil rights as defined in 18 U.S.C. § 921(a)(20). *Presley,* 851 F.2d at 1053. In *Berger,* the court analyzed West Virginia's juror-disqualification law and concluded that since the law was not limited to the period of time that the person was incarcerated, a felon's right to serve on a jury "was permanently lost as a result of his [felony conviction]." *Berger,* 867 F.Supp. at 430 (interpreting W.Va.Code § 52–1–8). Thus, the juror-disqualification statutes of both Missouri and West Virginia, as well as that of Pennsylvania, differ from Mass.Gen.L. ch. 234A, § 4(7) in that a person convicted of a felony in any of those states does not regain the civil right to serve on a

**10.** This Court notes with interest a recent decision from the District of New Hampshire, *United States v. Estrella,* Crim. No. 95–81–01–JD (D.N.H. Apr. 3, 1996) (DiClerico, C.J.), which was decided shortly after the First Circuit's *Caron II* decision reversing *Ramos.* Oddly enough, in *Estrella*—a case factually very similar to the

case at bar—the government conceded the very point that they now contest, namely that, *as matter of Massachusetts statutory law,* the defendant's right to sit on a jury substantially had been restored as of the date of the federal offense. *Estrella,* Crim. No. 95–81–01–JD at 5 (D.N.H. Apr. 4, 1996).

jury unless pardoned or granted amnesty. This fact, which differs from the law and the practice of Massachusetts, proved to be the basis for the courts' conclusion that a released felon's civil rights could never substantially be preserved or restored as contemplated by Congress in enacting section 921(a)(20).

The two cases analyzing Michigan law, *Metzger* and *Driscoll,* are most similar to the case at bar and concluded that a felon's civil rights were not restored upon release from prison where the right to serve on a jury was impaired. *Metzger,* 3 F.3d at 759;. *Driscoll,* 970 F.2d at 1478–79. In both *Metzger* and *Driscoll,* the defendants contended that their civil rights, which had been revoked upon conviction for a Michigan felony, had been restored under Michigan law upon their release. *Metzger,* 3 F.3d at 757; *Driscoll,* 970 F.2d at 1474. Michigan's juror-disqualification statute disqualifies from jury service anyone "under sentence for a felony at the time of jury selection." Mich.Comp.Laws Ann. § 600.1307a(1)(e) (West 1981). Although other courts had interpreted section 600.1307a(1)(e) as automatically restoring a felon's right to serve as a juror upon completion of his sentence, *see United States v. Dahms,* 938 F.2d 131, 134 (9th Cir.1991); *United States v. Gilliam,* 778 F.Supp. 935, 937 (E.D.Mich.1991), *rev'd,* 979 F.2d 436 (6th Cir.1992), *cert. denied,* 507 U.S. 1034, 113 S.Ct. 1856, 123 L.Ed.2d 478 (1993), the *Metzger* and *Driscoll* courts rejected those interpretations, holding that the Michigan Court Rules made a felony conviction grounds for an automatic for-cause challenge to a pro-

spective juror and thus impaired the juror's right to serve on a jury. *See Metzger,* 3 F.3d at 759 (relying upon Mich.Ct.R. 2.511[D][2] [1991]); *Driscoll,* 970 F.2d at 1478–79 (same). Like the *Driscoll* majority, the *Metzger* court also found instructive the fact that the Michigan Court Rules "directed— although they did not require—Michigan courts to excuse convicted felons *sua sponte* from jury panels in criminal cases once that ground for exclusion was established." *Metzger,* 3 F.3d at 759 (citing Mich.Ct.R. 6.412[D][2]).[11]

The discretion afforded trial judges in Michigan under Mich.Ct.R. 6.412[D][2] that is discussed in *Metzger* and *Driscoll* differs from that afforded trial justices in Massachusetts under Mass.Gen.L. ch. 234, § 8. The crucial distinction between the Michigan cases and the case at bar rests upon the subtle difference in the language of the Michigan Court Rules and the corresponding case law and language of sections of chapter 234. Section 8 specifically states that if a person has been convicted of any felony or is deemed to be otherwise unfit for jury service, "he *may* be relieved by [the court] from sitting in any case." Mass.Gen.Laws Ann. ch. 234, § 8 (West 1986). Unlike the state of the law in Michigan, a thorough search of relevant Massachusetts statutes, case law, and rules of court does not disclose any instruction to Massachusetts trial justices that requires them to dismiss persons whose past felonies are disclosed after the seven-year time period has passed. Rather, the trial justice "may" relieve a person from jury service, but the justice is not forced to do

---

**11.** Specifically, Mich.Ct.R. 6.412(D)(2) provides that

> If, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative *should,* or on motion of either party *must,* excuse the juror from the panel.

Mich.Ct.R. 6.412(D)(2) (emphasis added). In reaching its decision that Michigan did not fully restore a felon's civil right to serve on a jury, the *Driscoll* court noted that the combined effect of Mich.Ct.R. 2.511(D)(2) and 6.412(D)(2) was to require "a court to excuse a juror whenever a challenge for cause clearly falls within one of the enumerated grounds," *Driscoll,* 970 F.2d at 1479 (quoting *People v. Lamar,* 153 Mich.App. 127,

134–35, 395 N.W.2d 262 [1986]); *see also People v. Badour,* 167 Mich.App. 186, 189, 421 N.W.2d 624 ("If a party shows that a prospective juror comes within one of this court rule's enumerated categories, the trial court is without discretion to retain the juror, who must be excused for cause") (citation omitted), and concluded that "[under Michigan law, a felon] would be automatically dismissed from jury service once either party brought his former conviction to the attention of the court in either a civil or criminal case." *Driscoll,* 970 F.2d at 1479. Furthermore, the *Driscoll* court observed that "in a criminal case, Michigan court rules recommend that the trial court dismiss convicted felons on its on [sic] motion." *Id.*

so.[12] Likewise, disclosure of a prior felony conviction is not a ground for a mandatory challenge for cause in a civil or criminal case. Thus, *Metzger* and *Driscoll* do not here control.

In sum, the Massachusetts' juror-disqualification statute is not permanent in nature, for felons regain the opportunity to serve on a jury seven years after conviction. While trial justices in Massachusetts are afforded the discretionary authority to excuse a convicted felon from jury service even after the seven-year redemption period has passed, they are not required to do so. How, then, is Caron to be treated? He is a Massachusetts felon who, having regained his opportunity to serve on a jury, may nonetheless be excused by a trial justice and stripped of his right to serve as a juror as part of a particular venire. Have his civil rights been restored under 18 U.S.C. § 921(a)(20)?

### B. *Is Full Restoration or Only Substantial Restoration Required?*

■ The seminal case on this issue is the Sixth Circuit's opinion in *Cassidy*, where the court wrote

Our review of the legislative history has not produced a precise statement from Congress identifying the rights that must be restored by a state in order for it to have effected a "restoration of civil rights" for purposes of § 921(a)(20). We are confident, however, based on the general intent of Congress to redirect enforcement efforts against firearms owners that have a demonstrated potential for serious unlawful activity, that Congress envisioned a restoration of more than a de minimis quantity of civil rights. We do not read into the statutory language, however, a requirement that there be a "full" restoration of rights. If Congress had intended a requirement of a complete restoration of all rights and privileges forfeited upon conviction, it could easily have so stated.

*Cassidy*, 899 F.2d at 549 (footnote omitted). Although the felon in *Cassidy* received his rights to vote, to seek and hold public office, and to serve on a jury after his release from prison, the *Cassidy* opinion did not discuss the extent to which the right to serve on a jury had been restored. Among the cases that do address situations where a felon's

12. Absent from this discussion, of course, is any sense of what trial justices in Massachusetts actually do when confronted by the fact that a person with a felony conviction more than seven years old shows up on a jury venire. No Massachusetts practice treatise or continuing legal education pamphlet addresses the matter so far as I am aware.

I do remember what I used to do when I served as a Justice of the Superior Court in the years prior to the enactment of Mass.Gen.Laws ch. 234A and the advent of the "one day or one trial" jury system. In those days, were I the jury judge and were the matter brought to my attention, it was my unvarying practice to excuse the felon juror. Of course, if this is presently the general practice among the justices in the jury sessions of the Massachusetts Superior, District, Housing, and Juvenile Courts, then *Metzger* and *Driscoll* are persuasive authority indeed.

But a personal practice nearly two decades out-of-date is a poor guide for decision making today. This is especially so inasmuch as I recall no discussion of the matter among my Superior Court colleagues, nor can I recall any specific instance of granting (or denying) a specific challenge for cause on this ground in eight years of service on the Superior Court.

Still, as juror challenges are matters of record, it is at least theoretically possible to ascertain a pattern or policy in acting on such challenges in the jury sessions of the various Massachusetts trial courts. Indeed, the creation of electronic data bases that will retain and permit the search and retrieval of such data are possible today in every court session where the court reporter uses computer assisted transcription. This case presents a clear example of the need for such data bases so that the law can consistently be applied on the basis of what courts actually do. *See* Panel Discussion, "Lawyers Online: Discovery, Privilege and the Prudent Practitioner," *Internet Law Symposium*, Boston University, June 20, 1996 (to be published in the Boston University Journal of Science and Technology Law).

Unfortunately, due to inadequate funding, Massachusetts continues merely to tape record many of its trial sessions, thus frustrating any such analysis as a practical matter. For related problems with tape recording, *see generally Commonwealth v. Tavares*, Cr. No. JC–8725–188, 40 Mass. App.Ct. 1110, 662 N.E.2d 1063 (Mass.Super.Ct. March 24, 1995) (O'Neill, J.) (conviction set aside due to inadequate record); *United States v. Payne*, 894 F.Supp. 534, 537 n. 7 (D.Mass.1995) (noting this problem may be endemic); *United States v. One Ford 198X Mustang, Vehicle Identification No. 1FAB42E5JF290177*, 749 F.Supp. 324, 326 n. 1 (D.Mass.1990) (collecting cases noting problems in appellate review based on tape recordings).

right to serve on a jury is precluded by state statutes or rules of court, however, the operative language from *Cassidy* still applies. *See, e.g., Metzger,* 3 F.3d at 759 (ruling that barriers to jury service raised by state rules of court preclude a finding of a substantial restoration of civil rights necessary to satisfy § 921[a][20]); *Driscoll,* 970 F.2d at 1476 ("the restoration 'must be substantial, but need not be complete' ") (quoting *Dahms,* 938 F.2d at 133); *United States v. Gomez,* 911 F.2d 219, 221 (9th Cir.1990) ("There need not be a 'full' restoration of rights.") (quoting *Cassidy,* 899 F.2d at 549); *Presley,* 851 F.2d at 1053 (affirming district court's holding that "Congress intended substantial, not total, restoration of civil rights in order to qualify for the exclusion [contained in 18 U.S.C. § 921(a)(20) ]"); *Berger,* 867 F.Supp. at 427 ("To render a prior conviction unavailable for consideration in accordance with the civil rights restoration provision of section 921[a][20], the restoration of civil rights need not be complete, 'but it must be substantial.' ") (quoting *Metzger,* 3 F.3d at 758) (other citations omitted).

This Court follows *Cassidy* and its progeny and rules that, in the case at bar, Caron's right to serve on a jury substantially has been restored. Since more than seven years have elapsed with respect to each of the prior convictions that figure in his present sentence, he may be summoned for jury service within his county of residence in the ordinary course. Like any other citizen, he will, in random selection, be empaneled unless either excused by the justice presiding due to his felon status or successfully challenged by a litigant. Indeed, even if excused by the justice presiding, it appears that Caron would be credited like any other juror for having appeared in response to his summons and would thus be exempted—as a serving juror—from further call by the Commonwealth for the succeeding three years. *See* Mass. Gen.Laws Ann. ch. 234, § 2 (West 1985). Thus, Caron's right to sit on a Massachusetts jury, as well as his other material civil rights, substantially have been restored.[13]

**13.** In this conclusion, this Court respectfully disagrees with the decision of the Ninth Circuit in

### C. *Massachusetts Firearms Restrictions*

#### 1. *The Exception to the Exception*

In 1986, the Firearm Owners Protection Act, Pub.L. 99–308, § 101(5) (1986), specifically defined "crime punishable by imprisonment for a term exceeding one year" in 18 U.S.C. 921(a)(20) by the following language that is here material:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20); *see also United States v. Kolter,* 849 F.2d 541, 543 (11th Cir.1988) (discussing the history of the Firearm Owners Protection Act).

The language of this paragraph of section 921(a)(20) can best be understood as follows: the first clause of the second sentence of the above paragraph—the "shall not" clause—which begins with the words "Any conviction" and ends with the phrase "purposes of this chapter" creates an exception to the statutory definition of "conviction." The second clause of the second sentence, beginning with the word "unless" and ending with "firearms," carves out an "exception to the exception." Both clauses, read together, *inter alia,* serve to eliminate the sentence-enhancing effect of a felony conviction if the state of conviction determines that the felon shall be made whole, with the proviso that if the state limits the felon's access to firearms in particular ways, the felon's predicate crimes may be counted for the purposes of determining the length of sentence under 18 U.S.C. §§ 922(g)(1) or 924(e). *See Cassidy,* 899 F.2d at 546. As Massachusetts is Caron's state of conviction with respect to this aspect of the analysis, Massachusetts law must be considered to determine whether Caron is

*United States v. Oman,* 91 F.3d 1320 (9th Cir. 1996).

subject to the requisite federal firearms restrictions by virtue of his previous criminal convictions. *Id.; see also Driscoll*, 970 F.2d at 1480 (holding that "in cases involving 18 U.S.C. § 922[g][1], federal courts should examine state law solely for the purpose of determining whether the state has restored felons to their full civil rights, including allowing them to possess firearms").

Thus, under the second branch of the two-pronged analytical framework propounded in *Cassidy* and *Dahms*, Caron's earlier predicate crimes may still count pursuant to section 921(a)(20)—despite the substantial restoration of his civil rights—if Massachusetts law "expressly provides that [Caron] may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20); *Dahms*, 938 F.2d at 133; *Cassidy*, 899 F.2d at 549. If Massachusetts law so provides, then Caron's prior felony convictions must be counted against him, and Caron is therefore subject to the special punishment ordered by Congress in section 924(e)(1) for a felon who possesses a firearm despite three prior felony convictions. *See United States v. Erwin*, 902 F.2d 510, 511 (7th Cir.), *cert. denied*, 498 U.S. 859, 111 S.Ct. 161, 112 L.Ed.2d 127 (1990). In other words, this Court must sentence Caron as an armed career criminal.

Although Congress' primary concern was to look to state law in order to determine convicted felon status under section 921(a)(20), *Cassidy*, 899 F.2d at 548 & 549 n. 11, it is here necessary to determine whether the two jurisdictions—Massachusetts and the United States—speak as one with respect to limiting felons' access to firearms. A thorough review of Massachusetts and federal case law, statutory authority, and legislative history indicates that, as a threshold matter, Massachusetts law is not coextensive with federal law in limiting felons' access to firearms, given the differences in the two jurisdictions' definition of "firearm"

and the practical effect of Massachusetts weapons licensing statutes.[14]

### 2. *Federal Definition of "Firearm"*

Congress adopted Title IV of the Omnibus Crime Control and Safe Streets Act, Pub.L. No. 90–351, 82 Stat. 197 (1968) (relevant provisions of which were codified at 18 U.S.C. §§ 921–928, 1201–1203) (later amended by The Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1213 (1968) [relevant provisions of which were codified at 18 U.S.C. §§ 921–929] [hereinafter, as amended, the "Gun Control Act"] ), the precursor to modern-day federal firearms-possession statutes, in order to "keep firearms out of the hands of those not legally entitled to possess them." S.Rep. No. 1097, 90th Cong., 2d Sess. 2–3 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2113–14. The term "firearm," as it pertains to all sections contained in Title 18 of the United States Code—including section 921(a)(20)—is defined broadly as:

(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.[15] Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3). The term "weapon" is not defined in the federal statutes.

Under the plain language of this statute a "firearm" is a specific type of weapon, i.e. a subset of the array of items society uses as weapons. Congress meant the term "firearm" to include the entire subset of weapons which can fire, or be made to fire, a projectile out of a barrel with the aid of a propellant, with the specific exclusion of antique firearms, which are defined in another part of section 921(a). Thus, while brass knuckles, black jacks, shivs, knives, swords, spears,

---

14. For this reason, the Court finds the government's reference to *United States v. Bendolf*, Crim. No. 95–68–LON (D.Del. Aug. 20, 1996) unpersuasive. The key to the analysis in *Bendolf* is its assumption that the term "firearm" as used in the Massachusetts statutes means the same thing as it does under section 921(a)(20). *See*

*Bendolf*, slip op. at 13. Because this Court respectfully differs with that assumption, it is not moved by the *Bendolf* analysis.

15. The definition of the term "destructive device" is provided in section 921(a)(4).

lances, arrows, slings, catapults, and ballistas are weapons, they are not firearms. Likewise, crew-served weapon systems such as tanks and artillery are both weapons and firearms. Bazookas are probably firearms; rockets and missiles probably are not. More to the point, long arms such as "rifles" and "shotguns," although defined separately in section 921(a), have been held to be within the statutory definition of "firearm," *United States v. Mitchell*, 557 F.2d 1290, 1291–92 (9th Cir.1977) ("Congress, by using the comprehensive term 'firearm' without qualification, did not intend to remove rifles and shotguns from the reach of [18 U.S.C. § 922(h) ]"),[16] as are "handguns" and "semiautomatic assault weapons." *See* 18 U.S.C. §§ 921(a)(29) and 921(a)(30).

The term "firearm" is so liberally defined that it has been held to include even unloaded, inoperable weapons. *United States v. Gutierrez–Silva*, 983 F.2d 123, 125 (8th Cir. 1993); *United States v. Sanza*, 519 F.Supp. 26, 28 (D.Md.1980). Therefore, based upon the Ninth Circuit's holding in *Mitchell* and the unambiguous, all-inclusive language of 18 U.S.C. § 921(a)(3), this Court interprets Congress' reference to the term "firearm" in section 921(a)(20) to mean the entire set of weapons including, but not limited exclusively to, all such weapons as longarms and handguns.

### 3. *Massachusetts' Definition of "Firearm"*

Quite unlike the federal government, Massachusetts but narrowly defines the term "firearm." Under Massachusetts law, the term "firearm" as it applies to all state gun-control statutes is defined as

A pistol, revolver or other weapon of any description loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than sixteen inches or eighteen inches in the case of a shotgun as originally manufactured....

Mass.Gen.Laws Ann. ch. 140, § 121 (West 1991). Section 121 also separately defines "rifle," "shotgun," "sawed-off shotgun," and "machine gun" as weapons with varied individual characteristics. *Id.* (applying definitions to Mass.Gen.L. ch. 140, §§ 122–131F). The term "weapon" is not defined.

Based upon this definition of firearm, it appears that firearms in Massachusetts, although classified as a subset of a larger group of weapons, generally comprise a particular type of weapon: those weapons with a barrel length of less than sixteen inches, i.e., hand guns. Furthermore, Massachusetts law—unlike federal law—draws a clear distinction between firearms (i.e., handguns) and rifles, shotguns, and machine guns, separately defining each into mutually exclusive subsets of the general array of weapons. For example, a "rifle" is defined as "a weapon having a rifled bore with a barrel length equal to or greater than sixteen inches," while a "shotgun" is "a weapon having a smooth bore with a barrel length equal to or greater than eighteen inches." Mass.Gen. Laws Ann. ch. 140, § 121 (West 1991). In fact, Massachusetts distinguishes between firearms (i.e. handguns) and rifles and shotguns in nearly every section of its firearms sale and licensing statute, codified at Mass. Gen.L. ch. 140, §§ 122–131F. *See, e.g.,* Mass.Gen.L. ch. 140, §§ 122 (license requirements to sell weapons), 123 (conditions of licenses), 126 (signage requirements for gunsmiths), 128 and 128A (penalties for illegal sale or lease of weapons), 128B (unauthorized use of firearms), 129 (penalties for falsely declaring information).

---

**16.** In *Mitchell,* the defendant attempted to argue that since Congress distinguished rifles and shotguns from other firearms in another section of the federal gun control statute, 18 U.S.C. § 922(b)(1), it meant that distinction to apply to his alleged violation of 18 U.S.C. § 922(h) as well. *Mitchell,* 557 F.2d at 1291. The Ninth Circuit rejected his argument.

Prior to being amended in 1986, 18 U.S.C. § 922(h) provided that it was unlawful for four categories of persons, including a convicted felon, "to receive any firearm or ammunition which has been shipped or transported in interstate commerce." 18 U.S.C.A. § 922(h) (West 1976). Section 922(b)(1) prohibits licensed importers, manufacturers, dealers, or collectors from selling or delivering "any firearm or ammunition ... other than a shotgun or rifle, or ammunition for a shotgun or rifle" to any individual under 21 years old. 18 U.S.C. § 922(b)(1).

#### 4. The Difference Between the Federal and Massachusetts Regulatory Schemes; Effect on the Instant Case

■ The difference between the federal definition of "firearm" and the corresponding Massachusetts definition is crucial. The federal statute, 18 U.S.C. § 922(g)(1), prohibits firearms possession by a felon, and section 924(e) enhances the sentence imposed for violating section 922(g) if the felon has three previous felony convictions. According to section 921(a)(20), however, a prior felony conviction is not a conviction if, *inter alia,* the state of conviction restores the felon's civil rights, *unless* that state expressly restricts the felon's access to "firearms." Thus, if state law prohibits the "ship[ping], transport[ing], possess[ion], or recei[pt]" of the range of weapons referred to in the *federal* definition of "firearm," then the previous conviction qualifies, and the predicate offense may be counted toward the three offense total as specified in section 924(e).

Since there is a difference between Massachusetts' definition of "firearm" and the federal definition of "firearm," the real issue to be resolved in order to determine the range of Caron's sentence under the second prong of the *Cassidy* analysis is whether Massachusetts law restricts a felon's access to federal "firearms" to the degree intended by Congress when it drafted section 921(a)(20).

"The goal of firearms control legislation in Massachusetts is to limit access to deadly weapons by irresponsible persons." *Ruggiero v. Police Comm'r,* 18 Mass.App.Ct. 256, 258, 464 N.E.2d 104, *review denied by,* 392 Mass. 1104, 466 N.E.2d 522 (1984). This goal is accomplished through the implementation of a comprehensive regulatory scheme which requires aspiring gun owners potentially to obtain three separate documents—a firearm identification card, a license to carry, and a permit to purchase.

##### a. Firearm Identification Cards: Mass.Gen.L. ch. 140, § 129B

The issuance of firearm identification cards is governed by Mass.Gen.L. ch. 140, § 129B.

According to section 129B, a felon is entitled to receive a firearm identification card if five years have passed since conviction or release from confinement:

> Any person ... may submit to the licensing authority [an] application for a firearm identification card, *which such person shall be entitled to, unless* the applicant (a) has within the last five years been convicted of a felony in any state or federal jurisdiction, or within that period has been released from confinement where such person was serving a sentence for a felony conviction....

Mass.Gen.Laws Ann. ch. 140, § 129B (West 1991) (emphasis supplied).

Firearm identification cards by themselves may be obtained as "matter of right." *Commonwealth v. Landry,* 6 Mass.App.Ct. 404, 406, 376 N.E.2d 1243 (1978). A valid firearm identification card, without any other documentation, allows the holder lawfully to **own** or **possess** a firearm (i.e. a handgun), rifle, or shotgun. *See* Mass.Gen.Laws Ann. ch. 140, § 129C (West 1991) (making it illegal for anyone other than a licensed dealer or "one who has been issued a license to carry a pistol or revolver" to own or possess any handgun, rifle, or shotgun without also possessing a firearm identification card); Mass. Gen.Laws Ann. ch. 269, § 10(a) (West 1991) (criminalizing possession of handguns, rifles, and shotguns without possessing a valid firearm identification card); *see also Commonwealth v. Morse,* 12 Mass.App.Ct. 426, 428, 425 N.E.2d 769 (1981); *Landry,* 6 Mass.App. Ct. at 405, 376 N.E.2d 1243 (finding that "a firearm identification card ... authorizes the holder to 'own or possess' a firearm," but remaining silent about rifles or shotguns) (citation omitted). Thus, in Massachusetts, felons such as Caron may obtain a firearm identification card, which in turn allows the holder lawfully to **possess** firearms (i.e. handguns), rifles, shotguns, and ammunition.[17]

---

**17.** Indeed, at Caron's trial, there was testimony to the effect that in June 1991, after learning that he was eligible for a firearm identification card—despite his status as a felon—Caron applied for *and received* a firearm identification card. *Caron I,* 64 F.3d at 714. He understood the state of the law in Massachusetts to be that possession of the firearm identification card permitted him to purchase and possess guns, albeit solely within the confines of his home or place of business. *See id.* In 1993, federal agents seized a .22 caliber rifle and 185 rounds of ammunition from Caron,

### b. *License to Carry Firearms: Mass.Gen.L. ch. 140, § 131*

Individuals who qualify for a firearm identification card, however, may not lawfully **carry** a firearm (which is defined by Mass. Gen.L. ch. 140, § 131 as a handgun) on their person or under their control in a vehicle unless they also have a license to carry obtained under section 131 or are otherwise exempt from the licensing requirements. Mass.Gen.Laws Ann. ch. 269, § 10(a) (West 1990); *see also* Mass.Gen.Laws Ann. ch. 140, § 129C (West 1991) ("The possession of a firearm identification card issued under section [129B] shall not entitle any person to carry a firearm in violation of [ch. 269, § 10]."); *Commonwealth v. Ramirez*, 407 Mass. 553, 558, 555 N.E.2d 208 (1990) (citing *Commonwealth v. Seay*, 376 Mass. 735, 737, 383 N.E.2d 828 [1978]); *Landry*, 6 Mass. App.Ct. at 406, 376 N.E.2d 1243 (citing ch. 269, § 10[a]). This requirement comports with the intention of the Massachusetts Legislature. *Landry*, 6 Mass.App.Ct. at 406, 376 N.E.2d 1243 ("[T]he [Massachusetts] Legislature intended to condition the carrying of a firearm on compliance with the licensing requirements ... more stringent than those of G.L. c. 140, s. 129B"). The statutory restrictions on **carrying rifles** and **shotguns** are far more relaxed: valid firearm identification cardholders may carry a rifle or shotgun on their person or under their control in a vehicle. Mass.Gen.L. ch. 269, § 10(a)(4) subpar. (3); *Landry*, 6 Mass.App.Ct. at 406, 376 N.E.2d 1243. Valid firearm identification cardholders may, however, carry any **firearm** (i.e. handgun) within their residence or place of business without violating the law. *Ramirez*, 407 Mass. at 558, 555 N.E.2d 208; *Seay*, 376 Mass. at 742, 383 N.E.2d 828 (holding that Massachusetts licensing laws contain an implicit exemption from criminal liability for one who has a firearm identification card and carries a firearm within his residence or place of business).

Chapter 140, section 131 has been called a "first-line measure in [Massachusetts'] regulatory scheme." *Ruggiero*, 18 Mass.App.Ct. at 259, 464 N.E.2d 104. It governs the issuance of licenses to carry handguns.[18] Although any resident of the Commonwealth may apply for a license to carry, Massachusetts law explicitly states that convicted felons may not obtain such a license. The relevant language is as follows:

> After [an investigation into the criminal record and mental history of the applicant] has been completed, [the issuing authority] may, *except for ... a person who has been convicted of a felony ...* issue to a person ... a license to carry firearms [i.e., handguns] in the commonwealth.

Mass.Gen.Laws Ann. ch. 140, § 131 (West 1991) (emphasis added). Convicted felons in Massachusetts are similarly prohibited from obtaining licenses "to sell, rent or lease firearms [i.e., handguns], rifles, shotguns or machine guns, or to be in business as a gunsmith," Mass.Gen.Laws Ann. ch. 140, § 122 (West 1991); obtaining licenses to sell ammunition, Mass.Gen.Laws Ann. ch. 140, § 122B (West 1991);[19] and retaining any licenses

---

and subsequently seized six additional rifles and shotguns and over 6,500 rounds of ammunition from his place of residence. *Id.*

**18.** Chapter 140, section 131 is titled "License to carry or possess firearms." Both parties agreed at a hearing before this Court that section 131 applies only to handguns and not to shotguns and rifles. *See* Defendant's Note Concerning the Definition of "Firearm" as the Term is Used in G.L. c. 140, § 131 at 1. Caron was convicted of possessing rifles, shotguns and ammunition in violation of 18 U.S.C. § 922(g)(1). *Caron II*, 77 F.3d at 1.

**19.** In *United States v. Fortes*, Crim. No. 95–10383–GAO (D.Mass. July 24, 1996) (supplemental ruling) (Doc. No. 72), Judge O'Toole ruled that under chapter 140, section 122, felons in Massachusetts were "permanently disqualified from being licensed to possess firearms" and thus the "restoration of civil rights" provision of section 921(a)(20) could not apply. This Court's analysis suggests otherwise. Respectfully, chapter 140, section 122 deals not with licenses to possess firearms but with licenses to "sell, rent or lease firearms, rifles, shotguns or machine guns." Mass.Gen.Laws Ann. ch. 140, § 122 (West 1991). As mentioned earlier, chapter 140, section 131 addresses the requirements for a license to carry firearms within the Commonwealth. "[F]irearms" as used in that statute refers solely to handguns, not shotguns or rifles. Like *Estrella*, the holding in *Fortes* may be reconciled with the holding in this case. Fortes had no firearms identification card, thus making his possession illegal under Massachusetts law. Caron, in contrast, had a firearms identification

granted pursuant to section 122, Mass.Gen. Laws Ann. ch. 140, § 125 (West 1991).

### c. *Permits to Purchase Firearms: Mass.Gen.L. ch. 140, § 131A*

Chapter 140, section 131A regulates the purchase of firearms, requiring persons who qualify for a license to carry a handgun under section 131 to apply for a permit before purchasing a handgun. Heavily dependent upon the strictures propounded in section 131, section 131A provides, in relevant part, the following:

A licensing authority under [§ 131], upon the application of a person qualified to be granted a license thereunder by such authority, may grant to such a person, ... a permit to purchase, rent or lease a firearm [i.e., handgun] if it appears that such purchase, rental or lease is for a proper purpose, and may revoke such permit at will.

Mass.Gen.Laws Ann. ch. 140, § 131A (West 1991). *See also generally Ruggiero*, 18 Mass.App.Ct. at 257, 464 N.E.2d 104; *Commonwealth v. Sampson*, 383 Mass. 750, 758, 422 N.E.2d 450 (1981) (explaining role of § 131A permits in Massachusetts gun regulatory scheme); *Commonwealth v. Seay*, 376 Mass. 735, 740–41, 383 N.E.2d 828 (1978) (explaining Massachusetts gun licensing laws).

Under the statutes of this Commonwealth, therefore, a felon, provided the requisite five-year waiting period has expired and as long as he does not traffick in firearms as defined under Massachusetts law, is able to: (1) obtain a firearm identification card pursuant to Mass.Gen.L. ch. 140, § 129B; (2) purchase a shotgun or rifle since the constraint on obtaining a permit to purchase under chapter 140, § 131A applies only to handguns; (3) possess handguns, rifles, or shotguns at his home; and (4) carry rifles or shotguns upon his person or in his car. Under federal statutes, if the felon were to attempt the latter three acts with any firearm of any sort—rifle, shotgun, or handgun—he could (if other requirements are met, see section D, below) be convicted under section 922(g)(1). Yet, under the gun laws of the Common-

wealth of Massachusetts, the felon's actions are perfectly legal.

As applied to this case, therefore, Caron had every legal right under **Massachusetts** law to obtain a firearms identification card and, once he possessed it, to keep and carry rifles and shotguns. As a felon, however, this very conduct appeared to violate **federal** law and it is for this violation that he stands convicted. As Massachusetts has both substantially restored Caron's civil rights and has not expressly prohibited Caron from shipping or transporting (through another) or possessing or receiving rifles or shotguns, he may not be sentenced as an armed career criminal.

This conclusion is buttressed by the decision of some courts of appeal that there must be an explicit statement by the state legislature before the exception to the exception in 18 U.S.C. § 921(a)(20) can be applied. *See, e.g., United States v. Gomez*, 911 F.2d at 221–22 ("[T]he provision restricting the convicted felon's right to ... possess or receive firearms must be express."); *United States v. Erwin*, 902 F.2d 510, 513 (7th Cir.1990) ("A state must tell the felon *point blank* that weapons are not kosher") (emphasis added). In *Gomez*, the Ninth Circuit was persuaded by the "crucial fact" that Idaho had no state statute at all prohibiting felons from possessing firearms. *Gomez*, 911 F.2d at 222. Massachusetts law contains such statutes, and *Gomez* is thus distinguishable from this case, but Massachusetts does **not**—and this is crucial here—prohibit Caron from possessing the rifles and shotguns that formed the basis for his federal conviction.

The Court acknowledges, as it must, that Chief Judge DiClerico faced precisely the same question of the interrelation between the federal and Massachusetts gun control legislation in *United States v. Estrella*, Crim. No. 95–81–01–JD, slip op. (D.N.H. Apr. 3, 1996) (DiClerico, C.J.)—and reached a contrary conclusion. That is, *Estrella* stands for the proposition that, although Massachusetts substantially restores a felon's civil rights seven years after conviction (this point was conceded by the government in *Estrella*, see note 10 above), it sufficiently restricts a fel-

card and his conduct was entirely lawful under Massachusetts law.

on's access to firearms such that the exception to the exception applies. Accordingly, Chief Judge DiClerico ruled that the state felony conviction at issue provided a proper basis for a federal conviction under 18 U.S.C. § 922(g). *Id.* at 7. This Court respectfully reaches a different conclusion based on the definitional distinctions as between federal and Massachusetts law and, within Massachusetts law, as between rifles and shotguns and handguns.

The result in *Estrella* and the decision herein can, however, be harmonized. *Estrella* was convicted as a felon-in-possession of a weapon that the laws of Massachusetts expressly forbid him to possess without a firearms identification card. Such a harmonization, however, carries with it attendant complexities—i.e., that Massachusetts felons with three prior qualifying convictions who have had their civil rights restored but who thereafter possess weapons without a firearms identification card may be sentenced as armed career criminals, while identically situated felons with a firearms identification card who possess rifles and shotguns (and handguns in their homes) may not. This court need not assay such a harmonization in this case, for it suffices to hold that Massachusetts has not sufficiently proscribed Caron's association with firearms such that he may be sentenced as an armed career criminal in federal court.

### D. *Resentencing? The Law of Unintended Consequences*

The First Circuit concluded its opinion in *Caron II* with the order: "The judgment [upon Caron] is vacated and the matter remanded to the district court for resentencing." The clear import of this mandate is that Caron will remain subject to some lawful sentence. It is the range of the appropriate sentence that has been the focus of the parties' dispute during the hearings on remand, i.e. either the 15–22⅔ years range (the range between the fifteen year minimum mandatory sentence required by the Armed Career Criminal Act up to the sentence required by the Sentencing Guidelines and earlier imposed by this Court) or the 37 months to 10 years range (the sentence required by the

interplay of the minimum sentence permitted by the Sentencing Guidelines and the statutory maximum for the offense of being a felon-in-possession).

■ The analysis herein, however, leads inexorably to the conclusion that, once *Caron II* reversed the *Ramos* doctrine that only individualized treatment could restore a felon's civil rights, **at that very moment,** were Caron's offenses against the laws of Massachusetts alone, his indictment would become a nullity *ab initio* and thus subject to dismissal. In these circumstances, it would appear that Caron ought now be set at liberty. This is a remarkable result, apparently not contemplated by the First Circuit and in fact not urged upon the Court by any party. Still, were Caron's record from Massachusetts alone, such a result would be compelled by the undisputed facts on this record.

The confusion appears to stem from our too glib reference to the offense of conviction as the offense of being "a felon in possession of a firearm." Caron is, of course, a felon in the common law sense, i.e. he has been convicted of offenses which carry a potential sentence of more than one year in prison. Congress has not left it at that, however. In 18 U.S.C. § 921(a)(20) Congress provides expressly that "the term 'crime punishable by imprisonment for a term exceeding one year' does **not** include—[the exception with the exception to the exception]" that have been the focus of part II of this opinion. (emphasis added) Moreover, this definition applies not only to the determination of what constitutes a predicate offense for the purpose of sentence enhancement, *see* 18 U.S.C. § 924(e), it defines the offense of conviction as well. *See* 18 U.S.C. § 922(g). Just as Caron is no longer a felon for the purpose of enhancing his offense of conviction, so too— at least as to his Massachusetts convictions— he is not a felon for the purpose of offending against the felon-in-possession statute itself.

Consider the following: Caron's most recent felony conviction took place on April 30, 1979. He received a two year suspended sentence for unlawfully dealing in, possessing, and transferring firearms.

Five years later, on April 30, 1984, Caron became eligible once again to have a Massachusetts firearms identification card issued to him as matter of right.

On April 30, 1986, seven years after his last felony conviction, Caron had the last of his civil rights—the right to sit on a Massachusetts jury—substantially restored. At this point, his status was—What? A felon at common law, he no longer fit the Congressional definition found in 18 U.S.C. § 921(a)(20). As to his Massachusetts record at least, Caron was then an **ex-felon** for the purposes of federal law.

In June, 1991, Caron applied for and received a Massachusetts firearms identification card, thus making lawful (under Massachusetts law) his possession of the rifles and shotguns seized by federal agents in 1993.

On February 10, 1994, Caron was indicted in this Court for various violations of 18 U.S.C. § 922(g)(1), all stemming from his status as a federally-defined "felon." Yet, he was not.

True, for the seven years following April 30, 1979, he was, in fact, a federally-defined "felon." But on that date, April 30, 1986, Caron became, as to his Massachusetts record, an **ex-felon**—and there is simply no offense of being an "**ex-felon**-in-possession." [20]

The Ninth Circuit confronted a similar issue in *Dahms*, 938 F.2d 131 (9th Cir.1991). Dahms pleaded guilty in Michigan state court to a felony. After his release, he was subsequently convicted in Montana of violating section 922(g)(1) for being a felon in possession of a firearm, specifically a shotgun. *Id.* at 132. Upon appeal, the Ninth Circuit reversed the conviction, holding that Dahms should not have been indicted under section 922(g)(1) because he was not a convicted felon according to section 921(a)(20). As part of its analysis, the *Dahms* court examined Michigan state law and determined that although Michigan restricted an ex-felon's right to possess pistols, his right to possess a shotgun remained intact. *Id.* at

135 (interpreting Mich.Comp.Laws § 28.422 [1989] ). This fact, combined with Michigan's distinction between pistols and shotguns in a separate concealment statute, proved crucial in the court's determination that Michigan did not intend to restrict a felon's ability to possess all types of firearms. *Id.* (comparing Mich.Comp.Laws § 28.422 [licensing statute] with Mich.Comp.Laws § 750.222[a] [concealment statute] ). In conclusion, the court stated: "To apply § 922(g)(1) and conclude that Dahms' right to possess any firearm was restricted under federal law because the state restricted his possession of a pistol would undermine the explicit deference to state law in § 921(a)(20)," which Congress intended. *Id.*

The Ninth Circuit's approach in *Dahms* has been criticized by the Sixth Circuit in *United States v. Driscoll*, 970 F.2d 1472 (6th Cir.1992), *cert. denied*, 506 U.S. 1083, 113 S.Ct. 1056, 122 L.Ed.2d 362 (1993). Similar to the defendant in *Dahms*, Driscoll was convicted of violating section 922(g)(1) for possessing a shotgun. Analyzing the same Michigan laws as in *Dahms*, the *Driscoll* court interpreted section 922(g)(1) as creating an "all or nothing" approach to the possession of firearms by ex-felons: "[u]nder federal law, a person is either treated as a convicted felon, and thus prohibited from carrying any firearms, or is treated as though he had a clean record, and thus allowed to carry all legal firearms." *Id.* at 1480–81. The court emphatically stated that "the idea that Congress intended to treat various weapons differently within the same state simply contradicts the plain language of federal law," and therefore "refuse[d] to allow the intricate details of state law to override a fairly straightforward federal plan." *Id.* at 1481.

The problem with the Sixth Circuit's "all or nothing" approach is that in section 921(a)(20) Congress *has* allowed the "intricate details of state law" to interfere with its federal plan. By the plain language of section 921(a)(20) as interpreted by *Cassidy* and

---

**20.** Of course, under *Ramos*, Caron's status as a federally-defined felon was precisely correct as he had never received any individualized Massachusetts pardon. Therefore, under the law as it stood at the time of Caron's indictment and conviction, the proceeding against him was entirely lawful. Everything changed, however, when *Ramos* was reversed in *Caron II*.

other courts throughout the land, Congress ceded to the states the ability to determine whether the definition of conviction in 921(a)(20) applies to a particular felon. That cession of power to the states makes state law on the issue determinative. Although the First Circuit did not opine on the matter in *Caron II,* at least four other circuit courts of appeal have. *See, e.g., Dahms,* 938 F.2d at 135 (9th Cir.1991); *United States v. Burns,* 934 F.2d 1157, 1160–61 (10th Cir.1991), *cert. denied,* 502 U.S. 1124, 112 S.Ct. 1246, 117 L.Ed.2d 478 (1992); *Cassidy,* 899 F.2d at 546 (6th Cir.1990) ("we ... must look to the whole of state law ... to determine if [a felon's] firearms privileges have been expressly restricted"); *McLean,* 904 F.2d 216, 218 (4th Cir.1990), *cert. denied,* 498 U.S. 875, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990) (following Cassidy). In looking to the whole of state law, then, this Court must also look to the state definition of "firearm" and determine how such weapons are treated under *state* law. In sum, in enacting section 921(a)(20), Congress intended "deference to state law with respect to the federal firearms privileges of persons convicted in that state." *McLean,* 904 F.2d at 218 (quoting *Cassidy,* 899 F.2d at 549). That this deference would create a hodgepodge of variable state firearms restrictions was clearly recognized by Congress, as shown by the following statement of Senator Durenberger of Minnesota during debate over the Firearm Owners Protection Act in 1986:

> In the State of Minnesota, a convicted felon's civil rights are automatically restored when his sentence expires. Therefore, under the new federal law, it will no longer be a violation of the Federal Gun Control Act of 1968 for a Minnesotan convicted of a felony to possess a firearm after his sentences has expired. The same will be true in each State which automatically restores a convicted felon's civil rights. This creates a problem in my State. The ironic, unintended side effect of this 'glitch in the gun law' is to turn a law intended to crack down on crime into a law that could abet crime unless Minnesota changes its law regarding the civil rights of felons....

132 Cong.Rec. S14,974 (daily ed. October 3, 1986) *cited in Cassidy,* 899 F.2d at 548–49. So it is.

■ But there is more—and on the issue of whether Caron is a federally-defined "felon" as of the date of his indictment, the United States and California felony convictions must also be considered. It is here that Caron comes acropper.

## III. ANALYSIS OF FEDERAL LAW

The issue of "whether a federal felon cannot have his civil rights restored under federal law ... is a complicated question, one which involves the interpretation of federal law relating to federal rights." *Beecham,* —— U.S. at —— n. * *, 114 S.Ct. at 1672 n. * *. As noted above, for the purposes of section 921(a)(20), "civil rights" include "the right to vote, the right to seek and hold public office, and the right to serve on a jury." *Caron,* 77 F.3d at 2.

First, notwithstanding the federal conviction, Caron is eligible to vote in federal elections. Congressional electors in each state have the qualifications requisite for electors of the most numerous branch of the state legislature. U.S. Const., art. I, § 2, cl. 1 (House of Representatives); U.S. Constitution., amdt. XVII (Senate). In other words, if one may vote for a state legislator, then one may vote for Senator or Representative. As was noted earlier, Massachusetts does not disqualify an elector for state offices because of the elector's criminal history. *See* supra, II.A. Further, this prong of the test satisfies the *Beecham* court's requirement that defendant's civil rights be restored by the appropriate jurisdiction. While the specifics of elector qualifications are set by the state, the authority for the qualifications arises from the United States Constitution. *United States v. Mosley,* 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355 (1915); *Ex parte Yarbrough,* 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274 (1884).

Second, the Constitution is the sole source of eligibility for President of the United States and it does not preclude felons. U.S. Const., art. II, § 1, cl. 5; *see also Gordon v. Secretary of State of N.J.,* 460 F.Supp. 1026 (1978) (in which the plaintiff was a lawful

candidate for President while incarcerated). While it is true that "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members," U.S. Const., art. I, § 5, the Supreme Court has held that "the Constitution leaves the House without authority to exclude any person, duly elected by his constituents, who meets all the requirements for membership expressly prescribed in the Constitution," with the annotated observation that the same must hold true for the Senate. *Powell v. McCormack,* 395 U.S. 486, 522 & n. 44, 89 S.Ct. 1944, 1964 & n. 44, 23 L.Ed.2d 491 (1969). Although Caron could not have held a public office while in jail, *see* Mass.Gen.Laws Ann. ch. 279, § 30 (West 1981), he is now eligible for any federal elected office. Therefore, no standing rule bars Caron's ability to run for and serve in congressional office.

As a convicted felon, however, Mr. Caron has lost for all time his right to serve on a federal jury, and the loss of this crucial civil right—the right to participate in that most vital expression of direct democracy in America today, *Alexis v. Leporati,* Civ. No. 93–10003, 1996 WL 463675, at *2 (D.Mass. July 30, 1996), *In Re Acushnet River & New Bedford Harbor,* 712 F.Supp. 994, 1006 (D.Mass.1989), service on the nation's juries—is fatal to any claim by Caron that he was not a federally-defined felon at the time of his indictment.

Pursuant to 28 U.S.C. § 1865(b), a potential federal juror is excluded from service if he

(5) has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored.[21]

"This **disqualification** is intended to assure the 'probity' of the jury. It is rationally based, and hence is not unconstitutional."

*United States v. Foxworth,* 599 F.2d 1, 4 (1st Cir.1979) (Gignoux, J.) (citations omitted; emphasis added).

In the First Circuit, 18 U.S.C. § 1865(b)(5) is read as a blanket disqualification of felons for jury service, *United States v. Uribe,* 890 F.2d 554, 561 (1st Cir.1989) ("28 U.S.C. § 1865[b][5] ... bars certain felons from acting as jurors"); *Foxworth,* 599 F.2d at 4 (1979); and is so implemented.[22]

The Fifth Circuit approach is somewhat different. There the felony conviction does not render a person incompetent to serve as a juror, though such a juror, if seated, is subject to challenge for cause. *Ford v. United States,* 201 F.2d 300, 301 (5th Cir.1953). The Eastern District of Michigan follows this approach. Paul J. Komives & Peggy Blotner, Loss and Restoration of Civil Rights Affecting Disqualification for Federal Jury Service, 70 Mich.B.J. 542 (June 1991) ("Restoration of Civil Rights").

Either way, the impairment of Caron's civil right to sit on a federal jury is substantial. *Cf. Metzger,* 3 F.3d at 759; *Driscoll,* 970 F.2d at 1478–79.

Moreover, unlike the case law interpreting 18 U.S.C. § 922(a)(20), restoration of civil rights under 28 U.S.C. § 1865(b)(5) is uniformly held to require an "affirmative act recognized in law" with respect to the specific felon before such a person can qualify for federal jury service. *United States v. Hefner,* 842 F.2d 731, 732 (4th Cir.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 174, 102 L.Ed.2d 144 (1988); *Viverito v. Levi,* 395 F.Supp. 47, 48 (N.D.Ill.1975) (satisfactory termination of probation imposed by federal court restored citizenship rights to extent effected by Illinois law, but did not restore citizenship rights controlled by federal law). *See* Komives & Blotner, Restoration of Civil Rights at 546.

By virtue of his federal convictions, therefore, Caron is ineligible to serve on a federal

---

**21.** The Jury Plan for the United States District Court for the District of Massachusetts as amended (1989) inserts the phrase "have been lost and" after the words "civil rights" in this disqualification. This minor drafting change is of no consequence to this analysis.

**22.** The Court takes judicial notice, Fed.R.Evid. 201, that in the District of Massachusetts, felons whose civil rights have not been restored, *see* Federal Court Juror Qualification Questionnaire, questions 5–7, are uniformly excluded from jury service, not even being summoned to appear in the venire for possible empanellment.

256

jury. This, in turn, means that his federal civil rights have not adequately been restored pursuant to 18 U.S.C. § 921(a)(20). Accordingly, Caron is now and, more importantly, was at the time of the instant crime and indictment, a federally-defined felon. Thus, this already over long opinion need not continue with an analysis of the current status of Caron's civil rights in California in light of his conviction for attempted murder in that jurisdiction.

## IV. CONCLUSION

For the reasons stated above, Caron cannot be resentenced as an armed career criminal. The Clerk will schedule a hearing so that he may be resentenced on the offense of conviction.